### UNITED STATES of America

v.

### Shariff A. ROMAN, George Sepulveda, George Perry.

### Cr. Nos. 95–075–03ML, 95–075–01ML and 95–075–04ML.

United States District Court, D. Rhode Island.

June 10, 1996.

Gerard B. Sullivan, Assistant United States Attorney, Terrence P. Donnelly, Special Assistant United States Attorney, Providence, RI, for Plaintiff.

Richard K. Corley, Providence, RI, for Defendant Roman.

Walter R. Stone, Providence, RI, for Defendant Sepulveda.

John F. Cicilline, Providence, RI, for Defendant Perry.

### MEMORANDUM

LISI, District Judge.

On January 19, 1996, this court heard oral argument on three pre-trial motions filed by defendant Shariff A. Roman (Roman) and joined by co-defendants George Sepulveda (Sepulveda) and George Perry (Perry). On January 24, 1996, this court issued an expedited order without a formal memorandum. This memorandum reflects this court's rationale for denying the motions.

### I.  Background

Roman and his co-defendants are charged with racketeering in violation of 18 U.S.C. § 1961(4). The indictment alleges that Roman participated in several acts of racketeering, including the conspiracy to murder and the murder of Jose Mendez, and three addi-

tional conspiracies to commit murder.[1]  Because the offenses charged fall within 18 U.S.C. § 3591, Roman and three of his co-defendants may be subject to the imposition of the death penalty.[2]  *See* 18 U.S.C. § 3593.

Roman has filed three motions. They are entitled:

1.  "Motion to compel Government to reveal aggravating circumstances submitted to the Justice Department which qualify the defendant for the Death Penalty;"

2.  "Motion to compel Government to disclose the 'Death Penalty Evaluation Form' and any other information relevant to the decision whether to seek the Death Penalty submitted to the United States Department of Justice pursuant to [the] United States Attorney['s] Manual § 9–10.000;" and,

3.  "Motion to compel racial data in death eligible prosecutions."

This court will discuss the motions seriatim.

### II.  Discussion

#### Motion I

##### Motion to Compel the Government to Reveal Aggravating Circumstances

Roman requests this court to order the Government to reveal certain aggravating circumstances which would justify the Government's decision to seek the death penalty. *See* 18 U.S.C. § 3593(a)(2). Roman claims that "[i]n order to prepare for a trial [and] to defend himself against the charges and ... against the death penalty, due process requires that Roman be given notice of the elements of the ... aggravating circumstances upon which the [G]overnment intends to rely in seeking the death penalty." Defendant's Memorandum at 4. The Government contends that Roman is not entitled to the notice of the aggravating circumstances unless and until the Attorney General has

---

1.  Co-defendant Perry's alleged acts of racketeering include the murders of Temujin Vandergroen and Jose Mendez and three conspiracies to commit murder. Co-defendant Sepulveda's alleged acts of racketeering include the conspiracy to murder and the murder of Jose Mendez, witness intimidation and extortion.

2.  Since argument on these motions, a fifth co-defendant has pleaded guilty in exchange for the Government's agreement not to seek the death penalty.

certified this matter as a case wherein the Government will seek the imposition of the death penalty.

18 U.S.C. § 3593(a) provides that

"If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a).

At oral argument counsel for Roman conceded that the motion to compel the Government to reveal the "aggravating circumstances" was premature. Transcript of Motions Hearing—January 19, 1996 at 18, 39–40. According to the provisions of 18 U.S.C. § 3593(a), the Government must provide the information Roman seeks "a reasonable time before the trial or before acceptance by the court of a plea of guilty" once the Government determines that "a sentence of death is justified." 18 U.S.C. § 3593(a). At oral argument the Government advised this court that the Attorney General had not yet made the determination whether the Government will seek the death penalty[3], i.e., "whether a sentence of death is justified," as to Roman or any other of his co-defendants. January 19, 1996 Transcript at 18, 40; *see also* Government Memorandum at 10–11. Consequently, at this stage in the proceedings, Roman's motion is premature and may in fact become moot if the Government decides not to seek the death penalty. Therefore,

Roman's motion to compel the Government to reveal the aggravating circumstances which would justify a sentence of death is denied.

### *Motion II*

### *Motion to Compel the Government to Disclose the "Death Penalty Evaluation Form" and any Other Information Relevant to the Decision Whether To Seek the Death Penalty*

Roman's motion to compel the Government to disclose the "Death Penalty Evaluation Form," and any other information relevant to the decision whether to seek the death penalty submitted to the Department of Justice (DOJ), is grounded on his assertion that the protocol established by the DOJ, memorialized at § 9–10.000 of the United States Attorneys' Manual, gives rise to an unspecified due process "fundamental fairness" claim under the Fifth, Sixth, Eighth and Fourteenth Amendments. The Government contends that the protocol creates no right, procedural or substantive, which would support Roman's request. Government Memorandum at 3.

### *The United States Attorneys' Manual*

■ In January 1995, the Attorney General issued certain internal DOJ policies and procedures (protocol) to be followed in all federal cases in which a defendant is charged with an offense which may subject him or her to the death penalty. *See* § 9–10.000 United States Attorneys' Manual. The protocol applies regardless of whether the United States Attorney intends to request authorization to seek the death penalty. *Id.* at C. Section 9–10.000–A of the protocol provides that the "death penalty shall not be sought without the prior written authorization of the Attorney General." *Id.* at A. The protocol provides for the submission to the Attorney General of the local United States Attorney's recommendation on whether to seek the death penalty, a "Death Penalty Evaluation Form" and a prosecution memorandum outlining the theory of liability, the facts and evidence, including evidence relating to any

---

**3.** As of the date of publication of this memorandum the Attorney General has yet to make the determination whether the Government will seek the death penalty.

aggravating or mitigating factors, the defendant's background and criminal history, the basis for federal prosecution and any other relevant information. *Id.* at C. The information submitted pursuant to the protocol is reviewed by a committee appointed by the Attorney General. *Id.* at D. After reviewing the information, the committee provides the Attorney General with its independent recommendation of whether the death penalty is justified under the circumstances. *Id.*

The protocol also provides that "[c]ounsel for the defendant shall be provided an opportunity to present to the Committee, orally or in writing, the reasons why the death penalty should not be sought." *Id.* It is the Attorney General, however, who makes "the final decision whether the Government should file a 'Notice of Intention to Seek the Death Penalty.'" *Id.* The protocol provides for "standards for determination" to guide the death penalty decision making process. *Id.* at G. These standards outline an initial review of the relevant statutory and non-statutory aggravating factors and direct those involved in the decision making process to determine whether these factors "sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death." *Id.* at G. "In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General shall consider any legitimate law enforcement or prosecutorial reason which weighs for or against seeking the death penalty." *Id.*

■ Roman misconstrues the purpose and the impact of the protocol. The protocol articulates internal administrative procedures to be followed by DOJ personnel; the protocol does not create substantive or procedural rights. In fact, the protocol preamble specifically addresses this issue by stating that the protocol is intended to

> "provide[ ] only *internal* Department of Justice guidance. *It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any*

*matter civil or criminal.* Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice." United States Attorneys' Manual § 1–1.100 (emphasis added).

"[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party." *United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.), *cert. denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990) (citing *United States v. Busher,* 817 F.2d 1409, 1411 (9th Cir.1987) ("defendant not entitled to rely on United States Attorneys' guidelines where manual stated it did not create any rights enforceable at law by any party")); *see generally United States v. Montoya,* 45 F.3d 1286 (9th Cir.), *cert. denied* — U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995); *United States v. Stansfield,* 874 F.Supp. 640 (M.D.Pa.1994); *United States v. Loften,* 518 F.Supp. 839 (S.D.N.Y.1981), *aff'd,* 819 F.2d 1130 (2d Cir.1987). Since the protocol does not create, or sustain, an enforceable right, Roman's motion to compel the Government to reveal the Death Penalty Evaluation Form and other information relevant to the decision to seek the death penalty is denied.

### *Motion III*

### *Motion to Compel the Government to Reveal Racial Data*

In Roman's third motion, he requests this court to order the Government to assemble and disclose certain racial information in all potential federal death penalty prosecutions throughout the United States. Roman asserts that he requires this information to determine whether he is being selectively prosecuted because he is Hispanic. It appears that Roman's motion is essentially a request for discovery of information which Roman intends to use in support of his contemplated motion to dismiss the indictment, or, in the alternative to challenge the, as-yet, unmade decision to seek the death penalty. Although the Government concedes that the protocol permits the defendant to challenge a decision to seek the death penalty by offering proof of racial discrimination to the committee appointed by the Attorney General, the

Government contends that Roman has failed to make the necessary threshold showing of "some evidence" of selective prosecution which would warrant an order of this court directing the Government to provide Roman the information that he seeks.

### The Standard of Review

■ Roman's motion[4] requires this court to determine whether he should be allowed additional discovery on the issue of selective prosecution. The scope of discovery is generally controlled through the discretion of the trial judge. *United States v. Concemi*, 957 F.2d 942, 949 (1st Cir.1992). At oral argument and in their motions, both Roman and the Government argued that the proper standard of review to be applied to Roman's discovery request is that he must present a "colorable claim" of selective prosecution based upon race or ethnic origin. *See e.g. Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir. 1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). The court notes that this matter was briefed and argued before the United States Supreme Court decided *United States v. Armstrong*, —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). In *Armstrong* the Court determined the appropriate standard of review to evaluate discovery requests in selective-prosecution claims. *Id.* This court now examines Roman's request through the lens of *Armstrong*

and the applicable selective-prosecution precedent of the Court and this circuit.

■ The Government, through its prosecutors, has broad discretion in deciding whom to prosecute. *United States v. Bassford*, 812 F.2d 16 (1st Cir.), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978)). "[E]xceptionally clear proof" must be shown before an inference of abuse of that discretion may be drawn. *McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 1769–70, 95 L.Ed.2d 262 (1987). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, —— U.S. at ——, 116 S.Ct. at 1486. This circuit recognizes a threshold presumption that a prosecutor has acted in "good faith for reasons of sound governmental policy" in implementing the decision whether to prosecute. *United States v.*

---

**4.** Roman's discovery motion is exceedingly broad and does not contain any articulation to support his need for the particular items. Roman requests complete files based upon what appears to be his theory that there "might" be some document that "could" support his theory of selective prosecution. Roman's motion asks for the following:

"a. A listing of all defendants and cases throughout the United States since November 16, 1988 known to the Department of Justice and the Government in which one or more defendants was arrested and charged by State or Federal Law Enforcement authorities under facts which would have rendered the defendant eligible for the death penalty;

b. Copies of all requests and supporting documentation submitted by United States Attorneys or their staff seeking authorization from the Attorney General to seek imposition of the death penalty; .

c. Copies of all requests and supporting documentation submitted by United States at-

torneys or their staff seeking authorization to decline to seek the death penalty;

d. Captions and case numbers of all cases in which the request[s] for the death penalty were made and 1. approved or 2. disapproved.

e. All written standards, policies, practices or criteria employed by the Department of Justice to guard against the influence of racial bias in the selection of cases and defendants for capital prosecution; and

f. All written standards, policies, practices or criteria which delineate the factors employed by the Department of Justice in determining the substantial nature of the Federal interests involved in determining whether to seek Federal prosecution in a death eligible case.

Additionally, Roman seeks an Order compelling the Government to provide all copies of the one page form titled 'Non–Decisional Case Identifying Information' which is generated pursuant to the Department of Justice United States Attorney['s] Manual, § 9–10.00...."

*Saade,* 652 F.2d 1126, 1135 (1st Cir.1981). In order to overcome this presumption the defendant bears a heavy burden; he or she must show, prima facie, that

> "while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him [or her], he [or she] has been singled out for prosecution, and ... that the government's discriminatory selection of him [or her] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his [or her] exercise of constitutional rights ... [then] the burden shift[s] to the government to demonstrate that the prosecution was not premised on an invidious objective." *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir.1981); *see also Bassford,* 812 F.2d at 19; *United States v. Penagaricano–Soler,* 911 F.2d 833, 837 (1st Cir.1990).

■■■■■■ Discriminatory prosecution claims are judged pursuant to equal protection standards. *Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531. In order to succeed on a selective-prosecution claim the claimant must show that the prosecution was motivated by discriminatory purpose and had a discriminatory effect. *Id.*

> "Ordinarily, a claim of selective prosecution requires a showing that the challenged decision to prosecute had a discriminatory effect and that it was motivated by a discriminatory purpose.... In this circuit, we have consistently required that such a claim be supported by a showing that the decision to prosecute was an intentional form of discrimination against the defendant.... It must be shown that others similarly situated have not been prosecuted and that the decision to prosecute has been motivated by an impermissible reason." *Willhauck v. Halpin,* 953 F.2d 689, 711–712 (1st Cir.1991) (internal quotations marks and citations omitted).

In other words, in order to succeed on the claim on the merits, Roman must show that the prosecutors acted with a discriminatory purpose in his case, *see McCleskey,* 481 U.S. at 292, 107 S.Ct. at 1767, and that similarly situated individuals of a different ethnic group were not subjected to the imposition of the death penalty. *See Armstrong,* —— U.S. at ——, 116 S.Ct. at 1487.

If discovery is ordered in a selective-prosecution claim the Government must assemble information that may support or refute the claim. *Armstrong,* —— U.S. at ——, 116 S.Ct. at 1488. Consequently, a discovery order imposes many of the costs present when the Government is forced to respond to a prima facie case of selective prosecution. *Id.* Accordingly, *Armstrong* held that the "rigorous standard" required to support a selective-prosecution claim justified a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong,* —— U.S. at ——, 116 S.Ct. at 1488. In carving out the proper standard of review, the Court turned to the status of the law in the Circuits and noted that the requisite showing to establish entitlement to discovery in the Courts of Appeals was "to require some evidence tending to show the existence of the essential elements of" a selective-prosecution claim. *Id.* at ——, 116 S.Ct. at 1488 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)).

*Armstrong* specifically concentrated on what evidence constituted some evidence tending to show the existence of the discriminatory effect element of a selective-prosecution claim. *Id.* Noting that " '[s]elective prosecution' implies that a selection has taken place[,]" *id.* (citation omitted), the *Armstrong* Court held that in order to support a discovery request a defendant must "produce some evidence that similarly situated defendants of other races could have been prosecuted but were not...." *Armstrong,* —— U.S. at ——, 116 S.Ct. at 1488. The Court believed that if a claim of selective prosecution was well founded it would not be an insurmountable task to show that persons of other races or ethnic groups were being treated disparately. *Id.* at ——–——, 116 S.Ct. at 1488–89. "We think the required threshold—a credible showing of different treatment of similarly situated persons—adequately balances the Government's interest in vigorous prosecution and the defendant's

interest in avoiding selective prosecution." *Id.* at ——, 116 S.Ct. at 1489.

■ In summary, in order for Roman to be entitled to the documents he requests he must proffer some evidence tending to show that (1) the Government's decision to prosecute him was premised upon an impermissible factor, in this case, the fact that he is Hispanic, and (2) others similarly situated have not been similarly prosecuted. *See Armstrong,* —— U.S. at —— —— ——, 116 S.Ct. at 1488–89; *see also Willhauck,* 953 F.2d at 711–712, *Penagarican–Soler,* 911 F.2d at 833.

■ The only proffer that Roman submits in support of his motion is an affidavit from Kevin McNally, an attorney who serves as "Federal Death Penalty Resource Counsel" with the Federal "Resource Counsel Project" (project). McNally affidavit at 1. The project assists court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. *Id.* The McNally affidavit lists sixty cases in which the death penalty has been sought by the DOJ since November of 1988. *Id.* The affidavit lists the race, gender, and name of the defendant, and the docket number and the court where the case was filed. *Id.* The affidavit does not identify the criminal charges filed against each defendant. *Id.* According to the McNally affidavit, sixty-five percent of the death penalty defendants have been African–American, twenty percent have been Caucasian, twelve percent have been Hispanic and three percent have been Asian. *Id.*

Roman appears to rely upon the McNally affidavit for evidence of both discriminatory purpose and effect. Roman, however, offers no evidence specific to his own case that would support the inference that race played a part in his prosecution. *See generally McCleskey,* 481 U.S. at 292–93, 107 S.Ct. at 1767. Therefore, he has failed to meet the *Armstrong* "some evidence" burden with respect to the discriminatory purpose prong of a selective-prosecution claim. *See Arm-*strong, —— U.S. at —— —— ——, 116 S.Ct. at 1488–89.

Additionally, a fair reading of the McNally affidavit leads this court to the conclusion that Roman ignored pertinent information available to him which he chose not to include in his proffer, information required for Roman to clear the *Armstrong* "some evidence" hurdle with respect to the discriminatory effect prong. The affidavit provides in part that McNally's responsibilities include

"the monitoring of federal capital prosecutions throughout the United States, in order to ensure the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the *collection of data* on the application of the federal death penalty.... *Among the aspects* of each federal death penalty case about which the Project collects information is the race of the defendant....

In the course of our duties, the Project has collected the following information regarding all *potential* federal death penalty cases[.]" McNally affidavit at 1 (emphasis added).

This language suggests that McNally was privy to other germane information regarding *potential* death penalty prosecutions that Roman chose not to investigate or report to this court. Roman presented information to this court regarding only those cases in which the decision to seek the death penalty was certified; he chose not, however, to present any information reflecting the potential federal death penalty cases wherein the Government elected not to seek the death penalty.[5] At oral argument, Roman advised this court that, in addition to McNally, he had contacted "death penalty counsel" throughout the country, and the National Association of Criminal Defense Lawyers to "find out through their death penalty committee if they have the statistics available." January 19, 1996 Transcript at 26–27. However, the results of these contacts and investigations were not presented to this court.

---

5. At oral argument counsel stated that he believed that McNally had "information relating to all the cases where someone has been charged with a potential death penalty case in the Federal Government, such as this case." January 19, 1996 Transcript at 22. Additionally, counsel stated that McNally "may have the information" regarding cases that had the potential to be death cases but were not certified by the Attorney General. *Id.* at 26.

The information provided by Roman in support of his motion falls woefully short of the "some evidence" showing required by *Armstrong.* Roman does not even allege that his ethnic origin was a factor considered by the prosecution in bringing this action. Roman's proffer has also failed to identify other non Hispanic defendants whose offense subjected them to the imposition of the death penalty but were not so prosecuted. *See Armstrong,* —— U.S. at ——, 116 S.Ct. at 1489. By failing to present any evidence of the Government's election not to prosecute similarly situated defendants, Roman has not cleared the *Armstrong* "some evidence" hurdle with respect to the discriminatory effect prong. The meager information contained in the McNally affidavit does not, by itself, establish "some evidence" of disparate treatment or impact.

Roman's motion to compel the Government to reveal racial data is denied.