**UNITED STATES of America**

**v.**

**George SEPULVEDA, a/k/a "King Paradise" a/k/a "Dise" Terrence Boyd, a/k/a "King Bullet" a/k/a "T" Shariff A. Roman, a/k/a "King Biz" Edson Toro, a/k/a "King Humpty" Giovanni Lara, a/k/a "King G" Eryn Vasquez, a/k/a "King Guy."**

**No. CR 95–075ML.**

United States District Court,
D. Rhode Island.

Jan. 13, 1997.

Gerard B. Sullivan, Assistant United States Attorney and Terrance P. Donnelly, Special Assistant United States Attorney, Providence, RI, for Plaintiff.

Walter R. Stone, Providence, RI, for Defendant Sepulveda.

Edward L. Gerstein, Little Compton, RI, for Defendant Boyd.

Richard K. Corley, Providence, RI, for Defendant Roman.

Thomas Briody, Providence, RI, for Defendant Toro.

Bruce D. Todesco, Providence, RI, for Defendant Lara.

Francis J. Gillan, III, Providence, RI, for Defendant Vasquez.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court pursuant to defendant Terrence Boyd's Motion to Dismiss the Indictment on the Grounds of Selective Prosecution, or, in the Alternative, Request for Discovery and Evidentiary Hearing.[1] The motion is grounded on the assertion that the indictment underlying this case resulted from the improper exercise of prosecutorial discretion. The defendants contend that the indictment should be dismissed because the government impermissibly engaged in gender discrimination in choosing to prosecute only male members of the Providence Chapter of the Almighty Latin King Nation ("Latin Kings"), an organization which the government contends is an enterprise engaged in racketeering. See 18 U.S.C. § 1961. Alternatively, the defendants request an evidentiary hearing on the motion, as well as additional discovery. For the reasons stated below, the defendants' motions are denied.

## I. APPLICABLE LAW

Generally, the "[g]overnment, through its prosecutors, has broad discretion in deciding whom to prosecute." *United States v. Roman*, 931 F.Supp. 960, 965 (D.R.I.1996); *see also United States v. Bassford*, 812 F.2d 16, 19 (1st Cir.), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987). This latitude exists because prosecutors "are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, —— U.S. ——, ——, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996) (quoting U.S. CONST. art. II, § 3). In recognition of the breadth of this discretion, there is a threshold presumption that, in the absence of clear evidence to the contrary, these duties have been properly discharged. *See id.; see also United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir.1981); *United States v. Roman*, 931 F.Supp. at 965–66.

A prosecutor's discretion is, of course, "'subject to constitutional restraints.'" *United States v. Armstrong*, —— U.S. at ——, 116 S.Ct. at 1486 (quoting *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979)). One constraint is the equal protection component of the Due Process Clause of the Fifth Amendment. *See id.* A decision to prosecute "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification....'" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962)). This proviso includes decisions based on gender. *See United States v. Davis*, 36 F.3d 1424, 1432 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995); *United States v. Smith*, 30 F.3d 568, 572 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 604, 130 L.Ed.2d 514 (1994).

"The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *United States v. Armstrong*, —— U.S. at ——, 116 S.Ct. at 1487 (quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985)). In order to sustain such a claim, a defendant must establish that the government's decision to prosecute him or her had a discriminatory effect and that it was motivated by a discriminatory purpose. *See id.; Willhauck v. Halpin*, 953 F.2d 689, 711 (1st Cir.1991). In order to establish a discriminatory effect, a defendant must show that similarly situated individuals of a different classification were not prosecuted. *See United States v.*

---

1. Defendants George Sepulveda, Shariff A. Roman, Edson Toro, Giovanni Lara, and Eryn Vasquez join in this motion.

*Armstrong,* —— U.S. at ——, 116 S.Ct. at 1487.

These burdens are indeed demanding. This is not to say, however, that it is impossible for a defendant to sustain such a claim. *See id.* Rather, the rigorous standards reflect the concerns of the judiciary not to " 'chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry' " or " 'undermine prosecutorial effectiveness by revealing the Government's enforcement policy.' " *Id.* at ——, 116 S.Ct. at 1486 (quoting *Wayte v. United States,* 470 U.S. at 607, 105 S.Ct. at 1530–31).

These concerns are present not only in the context of what comprises a prima facie selective-prosecution claim, but rather permeate a selective-prosecution action from its inception. In order to obtain an evidentiary hearing, a defendant needs to allege sufficient facts that: (1) tend to show that he or she has been selectively prosecuted; and, (2) raise a reasonable doubt about the propriety of the prosecution's purpose. *See United States v. Gary,* 74 F.3d 304, 313 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2567, 135 L.Ed.2d 1084 (1996); *United States v. Peñagaricano–Soler,* 911 F.2d 833, 838 (1st Cir.1990); *United States v. Bassford,* 812 F.2d at 19. However, if the government can present concrete and legitimate " 'countervailing reasons' " to justify the prosecution, a court may refuse to hold a hearing notwithstanding the fact that a defendant has successfully satisfied his or her threshold burden. *United States v. Gary,* 74 F.3d at 313 (quoting *United States v. Peñagaricano–Soler,* 911 F.2d at 838).

A defendant must sustain a similar burden in order to obtain discovery in aid of his or her selective-prosecution claim. A defendant must "produce 'some evidence' making a 'credible showing' of both discriminatory effect and discriminatory intent." *United States v. Olvis,* 97 F.3d 739, 743 (4th Cir. 1996) (quoting *United States v. Armstrong,* —— U.S. at —— – ——, 116 S.Ct. at 1488– 89; *see also United States v. Al Jibori,* 90 F.3d 22, 25 (2d Cir.1996). This threshold requirement is designed to adequately balance "the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *United States v. Armstrong,* —— U.S. at ——, 116 S.Ct. at 1489.

## II. DISCUSSION

### A. *Selective–Prosecution*

In this case, the defendants contend that the government impermissibly chose to prosecute only male officers, members, or associates of the Latin Kings, notwithstanding the fact that a number of women who were members of the Latin Kings and purportedly "similarly situated" with the defendants have not been prosecuted. In support of this contention, the defendants focus on the roles in the Latin Kings of three women: Nadia Barboza, Evelyn Cuadrado, and Brandie Nunez.[2] The defendants contend that these three women were officers, members, and associates of the Latin Kings who actively and knowingly participated in several of the criminal acts for which a number of the defendants have been indicted.[3]

In support of their motion, the defendants direct the court's attention to statements and testimony presented to the grand jury that issued the underlying indictment. These statements not only identify Barboza as an officer or "crown" in the Latin King organi-

---

**2.** It should be noted that the defendants refer to Nunez only as an "unidentified female" in their memorandum. In its memo in opposition, the government identified Nunez as being the person to whom the defendants refer.

**3.** The defendants contend that Barboza actively and knowingly participated in an alleged conspiracy to murder and the murder of Jose Mendez, an alleged conspiracy to murder Jeffrey Smith, and various drug transactions. The defendants assert that Cuadrado actively and knowingly participated in the extortion of Donna Silva

and a conspiracy to murder an unnamed individual. Nunez was allegedly involved in a number of drug transactions. The various defendants are charged in relation to the conspiracy to murder and the murder of Mendez, the conspiracy to murder Smith, and the extortion of Silva. While none of the moving defendants are charged with drug offenses, another male member of the Latin Kings who was named as a defendant in the underlying indictment was charged with drug offenses, and has subsequently pled guilty to those charges.

zation, but also show that she was present at various meetings during which a number of the alleged crimes were discussed. Moreover, the testimony indicates that Cuadrado may have played an active role in the alleged extortion of Donna Silva.

■ According to the government, however, female members of the Latin Kings, commonly referred to as "Queens" or "sisters," are subject to a warped concept of institutional gender discrimination at play within the Latin King organization. Women are forbidden from holding any decisionmaking positions within the organization. Indeed, the highest office open to women, and the one which Barboza and Cuadrado both allegedly held at various times, is "Secretary."[4] The Secretary is allegedly responsible only for collecting and distributing Latin King literature and keeping records of all meetings.

Aside from the dissimilarities due to their gender, the individual circumstances of each of the three women precludes a finding that any of them were similarly situated with any of the defendants. In contrast to the defendants' roles, there is no evidence to suggest that Barboza provided anything more than "moral" support to any of the murder conspirators. Indeed, the grand jury testimony to which the defendants refer simply evidences Barboza's presence during various conspiratorial meetings.

The defendants do succeed in showing that Cuadrado actively participated in the extortion of Silva, and subsequently offered to assist in a murder conspiracy. Notwithstanding this fact, Cuadrado's age at the time of the relevant criminal activity sufficiently distinguishes her from the defendants so as to preclude a finding that she was similarly situated with them. Cuadrado was a juvenile at all times relevant to her involvement with the Latin Kings.

The defendants do not provide any significant details with respect to Nunez's involvement with the Latin Kings, rather they assert only that "the government . . . exercised its discretion in favor of yet another female by not prosecuting her on drug charges." Memorandum in Support of Defendant's Motion to Dismiss the Indictment, or, in the Alternative, Request for Discovery and Evidentiary Hearing, at 13. The government asserts, however, that Nunez never held any leadership position within the Latin Kings and that, while she distributed marijuana to high school students, she did not commit narcotics offenses of the same magnitude as those allegedly committed by one of the original defendants. The government also notes that, like Cuadrado, Nunez was a juvenile at the time she committed the narcotics offenses.

It should further be noted that each of these women provided grand jury testimony in this matter, and will likely be called by the government as a witness at trial. Moreover, none of the women have extensive criminal histories as several of the defendants do. The government also notes that a number of other active male members of the Latin Kings received lenient treatment similar to the three women due to their age, the fact that they held no leadership roles in the organization, their lack of an extensive criminal history, and their willingness to cooperate.

Turning to the second prong of the selective-prosecution analysis, the defendants have failed to meet their burden of showing discriminatory intent on the part of the government. Indeed, the defendants, apparently recognizing their inability to establish this prong, invite the court to waive this requirement. This court declines the invitation. A waiver is appropriate only "when the equal protection claim is based on an overtly discriminatory classification." *Wayte v. United States*, 470 U.S. at 608 n. 10, 105 S.Ct. at

---

**4.** According to the indictment, the top three offices in the Latin King organization are those of the Inca, Cacique, and Chief Enforcer. The Inca is the highest ranking officer in the Latin Kings, is elected by a majority vote of the chapter membership, and must conduct an election for a vote of confidence every two years. The Cacique is the second-in-command, is subject to the same electoral provisions as the Inca, and takes the place of the Inca in the case of his sudden departure or temporary absence. The Chief Enforcer, appointed by the Inca, allegedly is in charge of security for the Latin Kings, as well as maintaining the organization's inventory of firearms, administering discipline to Latin King members, and executing "termination orders."

1531 n. 10. Here, the defendants have not advanced any claim that the purported discrimination in this instance was overt.

The defendants, seemingly aware of the tenuous nature of their waiver argument, next posit that proof of the discriminatory purpose on the part of the government is "clear." Memorandum in Support of Defendant's Motion to Dismiss the Indictment, or, in the Alternative, Request for Discovery and Evidentiary Hearing, at 16. In so doing, however, they do not suggest the reasons for such translucence. Instead, they merely restate the well-established legal principle that gender cannot constitutionally be factored into the prosecutorial decisionmaking process.

■ The defendants' obfuscation of the discriminatory purpose prong is easily explained: gender did not play a role in the government's decision to prosecute. Instead, it is clear from the government's brief that a litany of other factors did: the willingness of a particular individual to cooperate, the amount of assistance that individual might be able to provide the government, the individual's criminal history, the individual's level of involvement with the Latin Kings, the age of the individual, and the likelihood of success the government might have in prosecuting that individual.

In summary, the defendants have failed to establish that the government's decision to prosecute the defendants was either motivated by a discriminatory purpose or had a discriminatory effect. As such, the defendants' motion to dismiss must be denied. The court now turns to address the defendants' alternative motions for an evidentiary hearing and discovery on its selective-prosecution claim.

### B. *Evidentiary Hearing & Discovery*

■ As noted above, a defendant is required to sustain certain threshold evidentiary burdens in order to receive either an evidentiary hearing or discovery. This court is not convinced that the defendants in this case have met either of these burdens. The defendants have failed to delineate any facts suggesting that the government's decision to prosecute the defendants was motivated by a discriminatory purpose or had a discriminatory effect. Moreover, the government has provided a plethora of concrete and legitimate countervailing reasons as to why the defendants in this case are being prosecuted and a number of females associated with the Latin Kings are not. This court sees no reason to revisit the defendants' shortcomings or the government's justifications at this time. Accordingly, the defendants' motions relating to an evidentiary hearing and discovery are denied.

### III. CONCLUSION

The defendants have failed to produce the clear evidence necessary to overcome the presumption that the government has exercised its prosecutorial discretion in accordance with the restraints imposed by the Constitution. Moreover, the defendants have failed to meet even the lower thresholds required to obtain an evidentiary hearing or discovery. Accordingly, the defendants' motion to dismiss and alternate motions for an evidentiary hearing and discovery are *denied.*

SO ORDERED.