**UNITED STATES of America,**

**v.**

**Ruben FELICIANO and Ronald Pagan.**

**Crim. No. 3:97CR204 (PCD).**

United States District Court,
D. Connecticut.

March 13, 1998.

John H. Durham, Anthony E. Kaplan, Karen L. Peck, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Susan F. Filan, Gulash & Riccio, Bridgeport, CT, Michael O. Sheehan, Sheehan & Reeve, New Haven, CT, for Defendant, Ruben Feliciano.

Hubert J. Santos, Santos & Seeley, Hartford, CT, Jonathan J. Einhorn, New Haven, CT, for Defendant, Ronald Pagan.

## RULING ON MOTIONS FOR DISCOVERY OF EVIDENCE IN MITIGATION OF POTENTIAL DEATH PENALTY

DORSEY, District Judge.

Defendants Ruben Feliciano and Ronald Pagan move pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), 18 U.S.C. § 3592, § 3593, Fed.R.Crim.P. 16, the Standing Order on Pretrial Discovery ("Standing Order") and the "Court's supervisory power," for discovery of evidence in mitigation of a potential death penalty.[1]

## I. BACKGROUND

Defendants are charged with a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5), which provides for a death sentence if convicted. The government has not decided whether to seek the death penalty. At the discovery conference the government notified defense counsel of the opportunity to provide any information

the defense deems relevant to the issue of mitigation which the government should consider in determining whether to seek the death penalty. That conference apparently prompted the current motions. The government opposes the motions as premature since it has not decided whether to seek the death penalty. The government also opposes defendants' specific requests as overbroad.

## II. DISCUSSION

### A. The Federal Death Penalty–Generally

If the government determines that the circumstances surrounding the commission of a death eligible offense justify a sentence of death, the government must file a Notice of Intent to Seek the Death Penalty "a reasonable time before the trial or before acceptance by the court of a plea of guilty...." 18 U.S.C. § 3593(a). The notice must set forth the aggravating factors that the government intends to prove as justifying the death penalty. *Id.* § 3593(a)(2). If the defendant is convicted or pleads guilty, a separate sentencing hearing is required. *Id.* § 3593(b). At the hearing, any relevant information is permissible including any evidence relating to mitigating or aggravating factors. *Id.* § 3593(c). *See* 18 U.S.C. § 3592 (listing aggravating and mitigating factors).

The Department of Justice Manual ("DOJ Manual") sets forth internal policies and procedures applicable to all federal cases in which a defendant is charged with an offense that carries a potential death sentence. DOJ Manual, § 9–10.000, *et seq.* (the "Protocol"). Pursuant to the Protocol, the United States Attorney ("USA") initially reviews the case and decides whether to request approval to seek the death penalty. If the USA decides to request such approval, defendant's counsel should be informed. DOJ Manual, § 9–10.000B. The USA then submits its recommendation to the Attorney General ("AG").[2]

---

1. Although entitled a motion for "discovery of evidence in mitigation," defendants also seek evidence not related to any mitigating factors.

2. The recommendation is submitted with the Death Penalty Evaluation form and prosecution

memorandum that must be prepared in all cases in which the USA intends to charge a defendant with a death eligible offense. DOJ Manual, § 9–10.000C; Death Penalty Evaluation form (Protocol, Appendix A, p. 9–246.13). The recommendation should be forwarded prior to the return of

When submitting a recommendation to the AG, the USA must include "evidence relating to any aggravating or mitigating factors" and "any written material submitted by counsel for the defendant in opposition to the death penalty...." *Id.* § 9–10.000C. These materials are reviewed by a committee appointed by the AG and "[c]ounsel for the defendant shall be provided an opportunity to present to the Committee, orally or in writing, the reasons why the death penalty should not be sought." *Id.* § 9–10.000D. The committee and the USA review all submissions, and the committee submits a recommendation to the AG, who makes the final determination. *Id.* § 9–10.000A, § 9–10.000D.[3]

Prior to deciding whether to request approval to seek the death penalty the USA "should give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration." *Id.* § 9–10.000B. It is this provision of the DOJ Manual that defendants argue entitles them to the requested discovery.

Defendants argue that since the Protocol provides that the defense should be permitted to offer mitigating evidence prior to the USA making a decision regarding the death penalty, they need prompt disclosure of the requested information. Absent early disclosure of this evidence, defendants assert they will be deprived of effective assistance of counsel and a fair decision-making process at this "crucial stage of the prosecution, which will affect not only the penalty, but the conduct of the entire case," in violation of the Fifth, Sixth and Eighth Amendments. Motion for Discovery of Evidence in Mitigation of Potential Death Penalty ("Motion for Discovery"), p. 3.[4] There is a dearth of caselaw on this issue, which is one of first impression in this circuit.

It has been found that the Protocol "does not create substantive or procedural rights." *United States v. Roman,* 931 F.Supp. 960, 964 (D.R.I.1996). Rather, "[t]he protocol articulates internal administrative procedures to be followed by DOJ personnel...." *Id.* It "provides for 'standards for determination' to guide the death penalty decision making process." *Id.* (citing DOJ Manual, § 9–10.000G). *Accord: United States v. McVeigh,* 944 F.Supp. 1478, 1483 (D.Colo.1996) ("the decision to seek the death penalty under the Act is a matter of prosecutorial discretion [and] [t]he Protocol [does] not create any individual right or entitlement...."). *Cf. United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990), *cert, denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party") (citations omitted); *United States v. Loften,* 518 F.Supp. 839, 856 (S.D.N.Y.1981), *aff'd,* 819 F.2d 1130 (2d Cir.1987) ("internal Government policies do not create rights in private citizens. The United States Attorney's Manual itself specifically states that it is not intended to, does not, and may not be relied upon to, create any rights whatever in any party").[5]

### B. The Standing Order/Supervisory Powers

■ Although the Protocol does not provide a basis to obtain information at this stage, "[a] federal court, guided by considerations of justice, may exercise its supervisory powers to formulate procedural rules not mandated by the Constitution [or statute]." *United States v. Ming He,* 94 F.3d 782, 792 (2d Cir.1996) (citing *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)) (internal citation and quotations omitted), *See also United States v.*

---

the indictment but in no event "later than 30 days prior to the date on which the Government is required ... to file notice that it intends to seek the death penalty." DOJ Manual, § 9–10.000C.

3. The recommendation from the committee should be given to the AG within fifteen days of receiving all the necessary information from the USA. DOJ Manual, § 9–10.000D.

4. Defendants' motions are identical.

5. Defendants rely on *United States v. Beckford,* 962 F.Supp. 804 (E.D.Va.1997), in support of their motion. However, *Beckford* is distinguishable in that the government had already filed a Notice of Intent to Seek the Death Penalty.

*Rosado–Rosario,* No. 97–049, 1998 WL 28273 at *1 (D.Puerto Rico, Jan.15, 1998) ("[t]he *broader discovery authorized by the court* related to defendants' need for substantial discovery in order to comply with the Department of Justice Death Penalty Protocol and Local Rule 428 . . . .") (emphasis added).

■ "A judge may regulate practice in any manner consistent with federal law, [the criminal rules], and local rules of the district." Fed.R.Crim.P. 57(b). Rule 16 is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Fed.R.Crim.P. 16, Adv. Comm. Note. *See also United States v. Beckford,* 962 F.Supp. 748, 755 (E.D.Va.1997) ("numerous courts . . . have recognized that the discovery provisions in Rules 12.2 and 16(b) are not exclusive and do not supplant a district court's inherent authority to order discovery outside the rules") (citations omitted).

This district's Standing Order requires disclosure by the government within ten (10) days from the date of arraignment in *all* criminal cases of "[a]ll information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." Standing Order ¶ (A)(11). The government does not address defendants' argument that they are entitled to the requested discovery under the Standing Order, apart from the Constitution and/or the Protocol.[6] Defendants are entitled under the Standing Order to disclosure of any evidence within the meaning of *Brady.* Defendants' specific requests are addressed below.

### C. *Discovery of Mitigating Evidence*

■ Defendants are clearly entitled to discovery of mitigating evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "Evidence relevant to a statutory mitigating factor would certainly be, for the defendant, 'favorable' evidence

pertaining to punishment in that it may justify a sentence of life imprisonment as opposed to death." *Beckford,* 962 F.Supp. at 811 (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). In order to be entitled to discovery of this information, "defendants need only establish a 'substantial basis for claiming' that a mitigating factor will apply at the penalty phase, in order to invoke the Government's obligation under *Brady* and its progeny to produce any evidence which is material to that mitigating factor." *Id.* (citing *U.S. v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

Defendants move for discovery of the following evidence of statutory and non-statutory mitigating factors:

### *Request A—Equally Culpable Defendants*

■ Defendants request discovery of:

All evidence in the Government's custody or control which relates to participation by persons involved in, but not facing a potential death penalty for, the murder charged in Counts One and Two of the Indictment [including] . . . all evidence relating to the participation of Nelson Gonzalez or any other Los Solidos members or others in the alleged murder, as well as all evidence potentially implicating any other person or persons in the planning and/or commission of the alleged murder.

A statutory mitigating factor is evidence that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." 18 U.S.C. § 3592(a)(4). Defendants assert that there is a substantial basis for claiming that this statutory mitigator will apply because Nelson Gonzalez allegedly ordered the killing, is not charged and is not facing the death penalty.

The government objects to this request on the basis that the investigation into possible other participants in the crime is ongoing and to disclose information at this time could affect that investigation.[7] The government

---

6. Defendants offer no authority for their argument that the Constitution requires this disclosure now.

7. The government does not object to this request to the extent it includes uncharged participants, *i.e.,* co-conspirators or accomplices, but not co-defendants. At least one district court interpret-

objects to the request as it pertains to Nelson Gonzalez on the basis that it already provided the defense with information indicating Mr. Gonzalez's involvement. Government's Response to Defendants' Motions for Discovery ("Government Response"), p. 9 n. 4.

Defendants' Request A is DENIED at this time, without prejudice. As disclosure of further evidence will jeopardize an ongoing investigation, the government may withhold it at this time. Such additional information will not preclude defendants' presentation of the statutory mitigating facts of Gonzalez's involvement. It is not necessary now that defendants know how that involvement can be proven.

### Request B—Victim Consent

Defendants request discovery of:

All evidence in the Government's custody or control indicating that the victims' [sic] affiliation with and participation in the activities of a rival gang to the Los Solidos knowingly exposed the victims [sic] to deadly force [including] ..., but not [ ] limited to, reports of witness interviews and any other written, tangible or oral evidence indicating tat [sic] the victim knew or had reason to know that Los Solidos employed violence, including murder, to enforce discipline relating to disagreements with rival gangs. This request includes all information in the Government's possession or control regarding the victim's involvement in narcotics trafficking on behalf of Los Solidos or indicating that the victim had knowledge of or had reason to know of such narcotics trafficking on the part of Los Solidos.

It is a statutory mitigator that "[t]he victim consented to the criminal conduct that resulted in [his] death." 18 U.S.C. § 3592(a)(7). Defendants assert that there is a substantial basis for claiming that this mitigator would apply at the penalty phase because the victim was a member of Los Solidos, which the indictment alleges was an

enterprise involved in racketeering, including drug trafficking and murder. Defendants rely on *Beckford*, 962 F.Supp. at 823–24, in support of this request.

Mere participation or involvement in an unlawful transaction, even one that is extremely dangerous does not constitute victim consent. "[A] victim's participation in drug trafficking activities is not alone sufficient to constitute 'consent' to the criminal conduct which caused his death...." *Beckford*, 962 F.Supp. at 822. It is recognized that "dealers in narcotics possess firearms, and that murder, assault, and other violent crimes are often associated with drug trafficking." *Id.* (internal citations and quotations omitted; external citations omitted). One who participates in such activity assumes the risk of subjecting himself to deadly violence but such participation is not "consent." *Id.*[8]

"[T]he relevant conduct which must be consented to, or participated in, is the act constituting the capital offense itself—*i.e.*, the act which is the cause of the victim's death." *Id.* at 821. "Implied consent," however, may exist if there is evidence that the victim instigated a "duet" with the alleged killer with knowledge of his or her reputation for murder and violence. *See Beckford*, 962 F.Supp. at 823–24 (voluntary participation in violent drug trafficking organization and instigation by victims of fight with defendants with knowledge that they possessed firearms was sufficient showing that there was a substantial basis for claiming that victim consented).

Defendants' request is overbroad. Additionally, defendants' basis for requesting this information is insufficient—they are not entitled to the information solely on the basis that the victim was a member of Los Solidos. However, there apparently is evidence that defendant Feliciano claimed to one or more witnesses that he took a gun away from the victim and shot him in self-defense. It can-

---

ed "defendant" to include uncharged co-conspirators and accomplices. *See Beckford*, 962 F.Supp. at 812–14 (and cases cited therein).

8. The *Beckford* court construed 21 U.S.C. § 848(m)(9), which is identical to Section 3592(a)(7). The court in *Beckford* provided a meticulous and reasonable analysis of this issue.

not be determined on the current record whether this statutory mitigator will apply at the penalty phase. Defendants' Request B is GRANTED consistent with the preceding discussion. The government must produce evidence in its possession, if any, which indicates that the victim "consented" to the criminal conduct as "consent" is defined herein.[9]

> *Request C:* All evidence in the government's possession regarding the commission by any co-conspirator or co-defendant, charged or uncharged, of a death-eligible offense in furtherance of Los Solidos enterprise against whom the government has not decided to seek the death penalty.

■ Section 3593 provides that "[a]t the sentencing hearing, information may be presented as to *any matter relevant to the sentence,* including any mitigating or aggravating factor permitted or required to be considered under section 3592." 18 U.S.C. § 3593(c) (emphasis added). The fact-finder at the penalty phase must consider "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." *Id.* § 3592(a)(8).

Citing *Beckford,* 962 F.Supp. at 826, defendants contend there is a substantial basis for claiming that Section 3592(a)(8) would permit defendants to offer at the penalty phase mitigating evidence of any murder or other death penalty offense committed by any co-conspir-

ator or co-defendant, charged or uncharged, relating to the racketeering enterprise and against whom the government does not seek the death penalty.

Whether defendants are entitled to this information depends on whether it would constitute mitigating evidence at the penalty phase. Section 3592(a)(8) only applies to "circumstances of *the offense.*" (emphasis added). The issue is whether "the offense" only refers to the capital murder or whether it refers also to the racketeering activities in furtherance of which the murder charged in the indictment was committed.

Sections 3592(a)(8) and 3593(c) demonstrate Congress' intent to allow broad admissibility of mitigating evidence at the penalty phase, *see Beckford,* 962 F.Supp. at 826, "regardless of its admissibility under the rules governing admission of evidence at criminal trials...." 18 U.S.C. § 3593(c). The sentencing hearing, however, should not be an "evidentiary free-for-all." *Beckford,* 962 F.Supp. at 826 (citations and internal quotations omitted). District courts can exclude evidence, although relevant, "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

Evidence that co-defendants or co-conspirators committed a death-eligible offense in furtherance of the enterprise charged in the indictment and the government has not sought the death penalty therefor is closely related to the statutory "equally culpable" mitigating factor. Defendants may be able to argue in mitigation of death [10] that other

---

9. The government apparently concedes its obligation to produce such information and represents that it has already informed defense counsel of the statements allegedly made by Feliciano. However, the government asserts that "counsel for defendant is in the best position to ascertain from his client any additional information about this claim." Government Response, p. 8 n. 3. The government cannot refuse to produce discovery in its possession on the basis that defense counsel is in a better position to obtain the information.

10. Decision is reserved as to whether any such evidence will be admitted at the penalty phase.

If it appears that the evidence is irrelevant or that its probative value is outweighed by the danger of unfair prejudice or confusing or misleading the jury, it will be excluded. The admission of evidence not related to the act with which defendants are charged with a death penalty eligible offense, *i.e.,* the murder of Edwin Ramos, presents a grave risk that the penalty phase will become a series of "mini-trials" regarding the aggravating and mitigating factors upon which the government relied in not seeking the death penalty for other capital offenses. *See Beckford,* 962 F.Supp. at 826–27 (cautioning against such result).

members of Los Solidos killed in furtherance of the enterprise and are equally culpable with respect to the overall enterprise but were not charged with a capital offense. *See Beckford*, 962 F.Supp. at 825–26.[11] Accordingly, defendants' Request C is GRANTED.[12]

> *Request D:* All evidence in the government's possession regarding the commission of any death-eligible offenses in furtherance of other Connecticut racketeering enterprises by any co-conspirator or co-defendant, charged or uncharged, against whom the government has not decided to seek the death penalty.

■ This request is broader than Request C in seeking evidence of death-eligible offenses committed in furtherance of other *similar* criminal enterprises in Connecticut, wholly unrelated to the enterprise charged in the indictment. Defendants have not demonstrated a substantial basis for claiming that this mitigator would apply. Such individuals are not co-conspirators or accomplices of defendants. They are not involved in Los Solidos or the racketeering activities charged in the indictment. It is not apparent how this information is probative of the culpability of defendants relating to this offense. *See Lockett v. Ohio*, 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Moreover, any possible probative value is outweighed by the danger of misleading and confusing the jury. *See, supra*, p. 172 n. 10. Defendants' Request D is DENIED.

> *Request E,F:* Evidence that the government has prosecuted minorities with death-eligible offenses with greater frequency than it has prosecuted whites who have committed similar offenses.

Defendants assert that there will be a substantial basis for arguing in mitigation of the death penalty if minorities are unfairly singled out for death penalty cases. Defendants cite no authority for this request.[13] The government does not object to defendants' claim that statistical evidence regarding racial disparities in prosecution of death penalty cases could be considered as a mitigating factor.[14] Rather, the government objects on the basis that defendants have failed to make the requisite showing to obtain discovery regarding selective prosecution.

The AG and the USA are afforded broad discretion in discharging their prosecutorial duties. *United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996). It is presumed that they properly discharge these duties "in the absence of clear evidence to the contrary." *Id.* (citation and internal quotations omitted). The standard to overcome this presumption by a claim of selective prosecution is strict.

■ Since discovery imposes many of the same costs and burdens on the government that accompany defending a selective prosecution claim, "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim [] require a correspondingly rigorous standard for discovery in aid of such claim." *Id.* 116 S.Ct. at 1488. To obtain discovery regarding selective prosecution, a defendant must "produce some evi-

---

11. The government erroneously contends that the *Beckford* court only permitted evidence relating to the capital murder with which the defendants were charged. The district court construed the equally culpable mitigator under section 848(m)(8), as limited to the specific capital murder charged. *Beckford*, 962 F.Supp. at 814. The court, however, allowed discovery of other capital offenses committed in furtherance of the Continuing Criminal Enterprise under the "catch-all" provision contained in section 848(j). *Id.* at 826. The court denied discovery of evidence of "other violent acts" committed by a co-conspirator or co-defendant. *Id.* at 826–27.

12. There is no suggestion by defendants or the government that any such evidence exists.

13. One factor the committee appointed by the AG is directed by the Protocol to consider is evidence of racial bias by the department in general or directed at the defendant. DOJ Manual, § 9–10.000D. Since the Protocol does not provide an independent basis to obtain discovery, defendants may not rely thereon.

14. Jurors are instructed not to consider race in deciding on the death penalty. 18 U.S.C. § 3593(f).

dence that similarly situated defendants of other races could have been prosecuted, but were not...." *Id.* at 1488. *See also United States v. Walker,* 910 F.Supp. 837, 858–60 (N.D.N.Y.1995) (defendants were not entitled to discovery in support of their motion to dismiss the indictment for selective prosecution because they had not met their threshold burden of establishing a colorable claim that they were singly selected for capital punishment premised on impermissible factors and discriminatory intent on the part of the prosecutors); *United States v. Roman,* 931 F.Supp. 960, 964 (D.R.I.1996) (applying a similar standard, the court denied defendant discovery of racial data, "which [defendant] intend[ed] to use in support of his contemplated motion to dismiss the indictment, or, in the alternative to challenge the, as-yet, unmade decision to seek the death penalty").

■■ Defendants' request arises in a slightly different context.[15] Defendants are not seeking dismissal of the indictment based on racial discrimination. Nor are they asking for a review of the government decision to charge them with a death-eligible offense. Rather, defendants claim this information is relevant to mitigation.

"[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a *mitigating factor,* any aspect of a defendant's character or record and other circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604 (emphasis in original).[16] However, a court may still "exclude, as irrelevant, evidence not bearing on the *defendant's character, prior record, or the circumstances of his offense." Id.* n. 12 (emphasis added). *Compare United States v. Pretlow,* 779 F.Supp. 758, 775–76 (D.N.J.1991) (upholding constitutionality of 21 U.S.C. § 848(*o*)(1), which prohibits race from being considered

by the jury during the death penalty phase, on the basis that this provision does not preclude the jury from hearing evidence regarding the impact of racial discrimination on the defendant's life).

Defendants have not met their burden of establishing a substantial basis for claiming that this mitigator will apply at the penalty phase. Statistical evidence of the racial composition in death penalty cases has no bearing on these defendants' character, prior record, or the circumstances of their offense. Nor is it claimed that charging these defendants with a death penalty offense was racially motivated. The admission of such evidence also presents a real danger of unfair prejudice and of confusing and misleading the jury.

Although framed as a request for mitigating evidence under *Brady* and the Standing Order, this request is really for evidence of selective prosecution. Defendants have not met their initial burden of establishing entitlement to this information under *Armstrong.*[17] Defendants' Requests E and F are DENIED without prejudice.

### D. *Remaining Requests*

Defendants also seek the following information under the Standing Order and/or Fed.R.Crim.P. 16:

> *Request I:* List of names, addresses and prior convictions of witnesses whom the government intends to call during the penalty phase.

■■ Neither the United States Code nor the Federal Rules of Criminal Procedure require or prohibit a district court from ordering pretrial disclosure of government witnesses in non-capital cases. *United States v. Cannone,* 528 F.2d 296, 298 (2d Cir.1975). In capital cases, however, the government is required by statute to provide the names and

---

**15.** In *Armstrong,* the respondents moved for discovery or for a dismissal of the indictment based on selective prosecution. That case did not involve a potential death sentence.

**16.** The language used in section 3592(a)(8) tracks the language used in *Lockett.*

**17.** Moreover, such evidence alone is insufficient to support a motion to dismiss the indictment or other challenge to the penalty based on selective prosecution. *See McCleskey v. Kemp,* 481 U.S. 279, 292–93, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *United States v. Bradley,* 880 F.Supp. 271, 277–78 (M.D.Pa.1994).

addresses of its witnesses three days prior to the commencement of trial. 18 U.S.C. § 3432. In this district, the government must provide such lists within ten (10) days of the date of the arraignment in the absence of a motion for a protective order. Standing Order ¶ (A)(9).

On December 4, 1997, the government's motion for a protective order was granted. Under the terms of that order the government is not required to reveal the names and addresses of its witnesses, as well as *Giglio* material relating to those witnesses and such other information which might identify the witnesses, until one week prior to the commencement of trial. That order applies only to witnesses who may be in danger if their identity is revealed. The government shall provide defendants with the requested discovery to the extent the information does not fall within the parameters of the protective order. Any information subject to the protective order will be provided to defendants ten (10) days prior to trial.

> *Request J:* All evidence in the government's possession which it intends to use during the penalty phase or is material to the preparation of the defense to any potential penalty phase, including any evidence the government intends to offer in support of aggravating factors; and all aggravating factors the government plans to offer at the penalty phase or which it considered in making its assessment of whether to seek the death penalty.

■ The statutory death penalty notice provision provides that the government must provide information regarding aggravating factors when it files its Notice of Intent to Seek the Death Penalty:

> [T]he [government] attorney shall, a reasonable time before the trial ... sign and file with the court, and serve on the defen-

dant, a notice—(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and (2) *setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.*

18 U.S.C. § 3593(a)(emphasis added).

Although not otherwise required,[18] the Standing Order requires disclosure of this evidence. Standing Order ¶ (A)(5). Accordingly, defendants' Request I is GRANTED to that extent. The government is not required to produce information regarding the aggravating factors it considered in making its assessment of whether to seek the death penalty if that information will not be used at any potential penalty phase.

> *Request H:* Results of physical and/or scientific tests or experiments which the government intends to offer at the penalty phase.

For the reasons set forth above, defendants' Request H is GRANTED. Standing Order ¶ (A)(5), (6).

> *Request K:* All information and factors on which the government based its decision that there is a more substantial interest in federal, as opposed to state, prosecution of this case.

■ Defendants claim to be entitled to this information on the basis that their counsel cannot represent them effectively in presenting arguments to the USA in opposition to the death penalty if they do not know on what basis the government decided to prosecute this case as a federal matter. As stated previously, the Protocol does not create any substantive rights and does not entitle defendants to any specific discovery. Moreover,

---

**18.** *See Roman,* 931 F.Supp. at 962–63 (motion to compel discovery of aggravating circumstances was premature and may become moot if the government decides not to seek the death penalty); *United States v. Nguyen,* 928 F.Supp. 1525, 1550 (D.Kan.1996) ("the Constitution is not of-fended even if a capital defendant is not informed of the aggravating circumstances on which the government will rely") (citing *Clark v. Dugger,* 834 F.2d 1561, 1566 (11th Cir.1987), *cert, denied,* 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988)).

the question of whether there is a more substantial interest in federal prosecution of a case is one which the government is advised to consider prior to obtaining an indictment for an offense subject to the death penalty. DOJ Manual, § 9–10.000F. This is entirely a matter of prosecutorial discretion.

This request is not encompassed within the Standing Order. Defendants' Request K is DENIED.

### III. CONCLUSION

In accordance with the foregoing discussion, defendants' motions for discovery of evidence in mitigation of the death penalty [doc. # 38, # 41] are GRANTED IN PART AND DENIED IN PART. No decision is made as to the admissibility of this evidence at any potential death penalty phase. The government shall produce the ordered discovery within fifteen (15) days of entry of this ruling.

SO ORDERED.