UNITED STATES of America

v.

Timothy Lynn HOLLOWAY.

No. 3:96–00004.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 3, 1998.

**436**

James A. Simmons, Edwards & Simmons, Nashville, TN, Richard Kammen, Indianapolis, IN, for Timothy Lynn Holloway.

Hillard H. Hester, III, Asst U.S. Atty., Wendy Hildreth Goggin, Office of the United States Attorney, Nashville, TN, for United States.

## MEMORANDUM

WISEMAN, Senior District Judge.

Before the Court are (1) the defendant's motion for discovery of information disclosing racial discrimination in the decision by the Department of Justice selecting the defendant to face the death penalty and (2) the defendant's supplemental submission of evidence and motion to dismiss the government's request for the death penalty because it is arbitrary, capricious and motivated, in part, by the defendant's race. For the reasons set forth below, the defendant's motions are denied.

### I. Relevant Background

On July 1, 1998, defendant Holloway filed a motion for discovery disclosing racial discrimination in the decision of the Department of Justice (DOJ) selecting him to face the death penalty. (Doc. 194.) The Court heard oral argument on Holloway's motion and ordered the government to produce the number and race of defendants charged with witness killings and the number and race of defendants authorized by the Attorney General to face the death penalty for the crime of killing a witness. While this information was originally filed under seal with the Court (Doc. 285), the Court has since unsealed this data. (Doc. 369.) Holloway then submitted additional evidence and filed a motion to dismiss the government's request for the death penalty because the request is motivated, in part, by Holloway's race. (Doc. 321.) Although Holloway has filed both a motion for discovery and a motion to dismiss, he has submitted essentially the same evidence in support of both motions. Consequently, the Court will treat the motions as a motion to dismiss the government's request for the death penalty or, in the alternative, for discovery.

Holloway contends, in essence, that DOJ authorized him to face the death penalty because he is white. In support of his motion, Holloway notes that of the 121 death penalty prosecutions approved by DOJ as of July 1, 1998, 94 of the defendants (77.7%) are members of minority groups. (Def.'s Mot. Disc. (Doc. 194) at 2.) As a result, Holloway claims that DOJ has been criticized for se-

lecting a high percentage of minorities to face the death penalty. *Id.* Supposedly, in order to avoid the issue of race and insure consistency in the death authorization process, DOJ has adopted a protocol whereby the Attorney General must approve all death penalty prosecutions. *Id.*

Holloway maintains, however, that DOJ has actually addressed the race issue by simply selecting more white defendants, including himself, to face the death penalty. *See id.* at 3. Specifically, Holloway claims that there are two black defendants in the federal system, Tederick Jones and Mark Anthony White, who are accused of committing crimes "substantially identical" to Holloway's crime; however, neither Jones nor White has been selected to face the death penalty. *Id.* "The only apparent difference between [Jones and White] and Mr. Holloway is race." *Id.* Therefore, Holloway argues, DOJ is engaging in constitutionally impermissible selective prosecution in an attempt to "balance the books." *See id.*

In support of his claim, Holloway has submitted the superseding indictments in the Jones case, *U.S. v. Thornton et al.,* No. 97–CR–50021 (E.D.Mich.), and the White case, *United States v. Spradley et al.,* No. IP 98–38–CR–M/F (S.D.Ind.). (*See* Def.'s Rep. Gov.'s Resp. Def.'s Mot. Disc. (Doc. 266) Attachs.) The superseding indictments reveal the following.

Jones has been accused of, *inter alia,* conspiracy to commit firearm murder during and in relation to drug trafficking in violation of 18 U.S.C. § 924(j) and § 924(o) and two counts of firearms murder during or in relation to drug trafficking in violation of 18 U.S.C. § 924(j)(1) and aiding and abetting in violation of 18 U.S.C. § 2. *Id.* Cts. 2–4 of Jones Indict. Specifically, Jones is accused of conspiring to plan and helping to carry out the murder of Lee Davis Strickland. *Id.* Ct. 2 of Jones Indict. Strickland was under indictment at the time of his murder, and the accused co-conspirators, including Jones and Ervin Thornton, were allegedly concerned that Strickland would provide information to law enforcement authorities about their involvement in drug trafficking. During the course of Strickland's murder, Jones and Thornton also killed Strickland's sister and wounded another man. *Id.* Cts. 2, 4 of Jones Indict.

At Jones's detention hearing, police lieutenant Jerome Koger testified that Ervin Thornton had implicated himself, Jones, Jewell Allen, and others in the murders. *Id.* Det. Hrg. Trscpt. at 7–8. According to Koger, Thornton stated that Allen was concerned that Strickland would "snitch him out" because Strickland was under indictment. *Id.* Det. Hrg. Trscpt. at 8. At some point, Allen threw $10,000 in Thornton's face and told Thornton that Thornton could have the money if he killed Strickland. *Id.* Apparently, Allen also purchased the clothing that was worn during the homicide. *See id.* Det. Hrg. Trscpt. at 8–9. After the murders, Allen paid Thornton and Jones $5000 each. *Id.* Det. Hrg. Trscpt. at 16–17.

The superseding indictment in White's case was filed on June 30, 1998. The indictment charges that White was a member of a conspiracy to distribute narcotics. *Id.* Ct. 1 of White Indict. Anthony Spradley is accused of being the organizer and leader of the conspiracy. *Id.* Ct. 1 of White Indict. ¶ 1. White's cousin, Marcus Willis, worked as a bouncer in a bar owned by Spradley. *Id.* Ct. 1 of White Indict. ¶ 27. On at least two occasions, Spradley confronted Willis about being an informant. *Id.* Ct. 1 of White Indict. ¶ 41, On at least one of those occasions, White was present. *Id.* Spradley, White and others met to discuss how they should address their concerns that Willis was an informant. *Id.* Ct. 1 of White Indict. ¶ 43. On June 27, 1997, Spradley and White again confronted Willis. *Id.* Ct. 1 of White Indict. ¶ 45. White is accused of shooting and killing Willis later that day in White's truck. *Id.* Ct. 1 of White Indict. ¶ 48. Specifically, the superseding indictment charges that White and others killed Willis to prevent him from communicating with law enforcement officers, in violation of 18 U.S.C. § 1512(a)(1)(C). *Id.* Ct. 2 of White Indict. The superseding indictment also charges that White and others killed Willis in order to retaliate against him for providing information to law enforcement officers in violation

of 18 U.S.C. § 1513(a)(1)(B). *Id.* Ct. 3 of White Indict.

Holloway has also submitted an affidavit by Kevin McNally, who serves as Federal Death Penalty Resource Counsel with the Resource Counsel Project ("the Project"). (Supp. Subm. Ev. and Mot. Dis. Gov.'s Req. Death Pen. (Doc. 321) Ex. A. at 1.) The Project assists court-appointed and defender attorneys charged with the defense of capital cases in federal court. *Id.* McNally's affidavit lists the 133 cases in which the death penalty has been sought by DOJ since 1988. *Id.* Ex. A at 2. The list includes the race, gender, and name of the defendant and the docket number and court where the case was filed. *Id.* Ex. A at 2–9. The affidavit does not identify the criminal charges filed against each defendant. *See id.* McNally states that fifty-nine percent of federal death penalty defendants have been African–American, twenty-four percent have been Caucasian, thirteen percent have been Hispanic, and four percent have been Asian/Indian. *Id.* Ex. A at 2. According to Holloway, McNally's affidavit suggests that after the Attorney General began approving death penalty prosecutions, the racial composition of the defendants selected to face the death penalty changed considerably as many more whites were authorized to face capital prosecution. (Supp. Subm. Ev. and Mot. Dis. Gov.'s Req. Death Pen. (Doc. 321) at 3, Ex. A.)

Finally, Holloway has submitted records produced by DOJ in response to a court order by Judge Sonia Sotomayor of the U.S. District Court for the Southern District of New York. These records consist of statistical information based on the cases of the 296 defendants that the Attorney General reviewed between January 27, 1995 and August 10, 1998.[1] *Id.* at 3–4, Ex. B. The statistics are broken down by race and include the number of cases reviewed, the number of defendants authorized to face the death penalty, the number of defendants not authorized to face the death penalty, and percentages. *Id.* Ex. B. Holloway insists that these statistics "when objectively analyzed, demonstrate[ ] that, public assurances to the con-

trary, race is a factor in the decision of the Department of Justice concerning who will face the Death Penalty." *Id.* at 4.

The government has responded that under *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), Holloway's statistical evidence and his assertion that two black defendants charged with the same crime were not selected to face the death penalty are legally insufficient to establish the threshold showing that is necessary before a court can order discovery or dismiss a request for the death penalty on the basis of selective prosecution. (Gov.'s Resp. Def.'s Mot. Disc. (Doc. 232) at 2–3; Gov.'s Resp. Def.'s Supp. Subm. Ev. and Mot. Dis. Gov.'s Req. Death Pen. (Doc. 360) at 2.) Moreover, the indictment and death penalty notice filed in this case "evidence a legitimate and objective justification for seeking the death penalty against [Holloway], based upon the aggravated nature of his crimes." (Gov.'s Resp. Def.'s Supp. Subm. Ev. and Mot. Dis. Gov.'s Req. Death Pen. (Doc. 360) at 6.) The government argues that the defendant has failed to rebut the strong presumption that capital prosecution in this case has been undertaken in good faith. *Id.* at 6–7.

## II. Analysis

### A. The Defendant's Motion for Discovery from the Department of Justice

 The Attorney General and United States Attorneys have broad discretion to enforce the criminal laws and determine when and whom to prosecute. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *United States v. Bradley*, 880 F.Supp. 271, 278 (M.D.Pa. 1994). "There is a presumption that prosecutions are commenced in good faith and without a discriminatory motive." *Bradley*, 880 F.Supp. at 278. Consequently, courts are "reluctant to question the motives of prosecutors." *Id.* 880 F.Supp. at 279. Nevertheless, prosecutors' discretion is " 'subject to constitutional constraints.' " *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480 (quoting *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)).

---

1. These statistics were also produced to this Court by the government under seal. (Doc. 285).

The Court has since unsealed these records. (Doc. 369.)

For example, a prosecutor may not select a defendant for prosecution solely on the basis of race. *Id.* (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)); *Bradley,* 880 F.Supp. at 279 (citing *Oyler* ).

■ In the instant case, Holloway contends that the Attorney General has selected him to face the death penalty due, at least in part, to his race. He requests that the Court dismiss the government's request for the death penalty or, in the alternative, order discovery from DOJ. In order for a defendant to obtain discovery in a selective prosecution case, there must be " 'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)).

### 1. Discriminatory Effect

■ To establish the discriminatory effect element, a defendant must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not." *See id.* 517 U.S. at 469, 116 S.Ct. 1480. The *Armstrong* court found that the discriminatory effect element was not satisfied where the respondents "failed to identify individuals who were not black, could have been prosecuted for the offense for which respondents were charged, but were not so prosecuted." *See id.* 517 U.S. at 470, 116 S.Ct. 1480. In the case at bar, Holloway has submitted superseding indictments in the cases of Tederick Jones and Anthony White as evidence that similarly situated black defendants were not selected to face the death penalty. In addition, as required by the Court, the government has submitted statistical evidence concerning all federal defendants who have been charged with witness killings and who have had their cases reviewed by the Attorney General for death penalty authorization.

### a. The Cases of Tederick Jones and Anthony White

■ Holloway asserts that his crimes are "substantially identical" to those of Jones and White, but Jones and White have not been selected for the death penalty because they are black. While the crimes that Holloway, Jones and White are accused of may appear to be very similar on the face of the indictments in their respective cases, a careful inspection of the indictments reveals that these three cases are distinguishable. Holloway is charged with the following crimes: (1) conspiring to travel in and cause another to travel in interstate commerce with the intent to commit a murder for hire in violation of 18 U.S.C. § 1958(a); (2) causing others to travel in interstate commerce with the intent to commit a murder for hire in violation of 18 U.S.C. § 1958(a) and 18 U.S.C. § 2; and (3) killing a witness, Denise Rogers, who was scheduled to testify before the Federal Grand Jury in order to prevent her attendance at and testimony before the Grand Jury in violation of 18 U.S.C. § 1512(a)(1)(A), 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2. (Second Superseding Indictment (Doc. 52).)

Unlike Holloway, neither Jones nor White is charged with violating § 1958(a). While Holloway and White are both charged with killing individuals in order to prevent those individuals from communicating with law enforcement officers, neither Jones nor White is charged with the murder of a Federal Grand Jury Witness. Jones is accused of killing Lee Davis Strickland while Strickland was under indictment because Jewell Allen thought Strickland might snitch Allen out. White is accused of killing an informant, Marcus Willis. Holloway alone is charged with killing a witness in order to prevent her from testifying against him before the Grand Jury.

Moreover, of the three defendants, Holloway appears to be the only ringleader. According to the documents submitted to the Court by Holloway, Jewell Allen—not Jones—apparently orchestrated Strickland's murder. Similarly, in the White case, the indictment specifically accuses Anthony Spradley of being the organizer and leader of the underlying drug conspiracy. The indictment also indicates that Spradley confronted Willis about his status as an informant outside of White's presence, and White only confronted Willis with Spradley. In addition, White apparently met with others to discuss

Willis's murder. There is no indication from the indictment that White himself arranged Willis's murder. In contrast, Holloway is accused of planning and paying for the murder of Denise Rogers. There is, perhaps, no crime that strikes a greater blow against the criminal justice system than the murder for hire of a Federal Grand Jury Witness.

Although the Court recognizes that only so much information can be gleaned from indictments, Holloway has not provided the Court with any other evidence that minority defendants accused of similar crimes have been treated differently than him by DOJ. Therefore, based on the evidence before it, the Court finds that the Holloway, Jones and White cases are factually distinguishable and the indictments in the Jones and White cases do not provide evidence that similarly situated defendants of other races could have been selected to face the death penalty, but were not.

■■■ If anything, a comparison of the indictments in the Holloway; Jones and White cases demonstrates exactly why courts should defer, in most cases, to prosecutorial discretion. Courts simply cannot and should not be privy to all of the factors that comprise a decision whether to prosecute or, in this case, a decision whether to authorize a defendant to face the death penalty. As the *Armstrong* court recognized, courts are generally not competent to analyze the strength of a case, " 'the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.' " *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480 (quoting *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). In this case, the Court is not competent to make a determination, based solely on a comparison of indictments, that some evidence exists to show that Holloway was treated differently than Jones and White because he is white and they are black. Without more, the Court is unwilling to overstep its bounds and "impair the performance of a core executive constitutional function." *Id.*

### b. Statistics on Witness Killings

The Court also has before it statistics on the number and race of defendants who have been charged with witness killings and whose cases have been reviewed by the Attorney General, as well as statistics on the number and race of defendants authorized by the Attorney General to face the death penalty for the crime of killing a witness. (Gov.'s In Cam.Res.Stat.Inf.Fed.Cas. (Doc. 285) at 4.) These statistics are:

| | White | Black | Hispanic | Other | Total |
|---|---|---|---|---|---|
| No. Reviewed | 5 | 22 | 1 | 0 | 28 |
| Authorized | 3 | 4 | 0 | 0 | 7 |
| Not Authorized | 2 | 18% | 1 | 0 | 21 |
| % Authorized | 60% | 18% | N/A | N/A | |
| % of Total Authorized | 42.8% | 57% | N/A | N/A | |

The above statistics are based on cases reviewed between January 27, 1995 and August 10, 1998 where defendants were charged with violations of 18 U.S.C. § 1121, § 1512, or § 1513. *Id.* at 2. The data is not completely accurate because there may be cases charged under different statutes where the underlying crime was the killing of a witness. *Id.* The number of white defendants reviewed (5) includes Holloway and two of his co-defendants, Donnie Cable and Paul Dugger. *See id.* at 4. The number of white defendants authorized (3) includes Holloway and Cable. *See id.* The Attorney General did not authorize Dugger to face the death penalty.

At first blush, these statistics appear to be very alarming, indicating that 60% of whites reviewed have been authorized for capital prosecution while only 18% of blacks reviewed have been selected to face the death penalty. Presumably, Holloway's defense team would attempt to use this information to argue that Holloway has been treated differently than similarly situated black defendants. The statistics, however, are misleading.

First, because of the small number of cases, these data are subject to chance variation. Indeed, the differences between whites and blacks are not statistically reliable, i.e., fall short of statistical significance. Second, before Holloway can use these numbers to establish a pattern of racial discrimination, he must remove himself and his co-defendants from the data. Once Holloway, Cable and Dugger are removed from the numbers, the statistics show that only two white defendants accused of witness killings have been reviewed by the Attorney General. Of the two, only one (50%) has been selected to face the death penalty. Again, while 50% appears to be a large number, the pool of white defendants is still too small for any conclusions to be drawn from the data. In particular, the numbers of white and minority defendants reviewed/authorized to face the death penalty do not show statistically reliable differences. Certainly, Holloway cannot claim that because one white defendant out of two and four black defendants out of twenty-two were selected to face the death penalty that white defendants charged with witness killings are more often selected for capital prosecution due to their race.

Even if the Court were to grant Holloway's request for discovery based on DOJ's data, it is very unlikely that Holloway could prove that race is a factor in the selection of defendants charged with witness killings to face capital prosecution. Holloway would first need to identify all of the variables considered by the Attorney General in deciding whether to authorize a defendant to face the death penalty. He would then need to conduct a sophisticated multivariate analysis to determine whether race differentiates the groups above and beyond the influence of these other variables. The sample size— 25—is too small to support such analysis, however, and the results would therefore be inconclusive. Consequently, the Court finds that the statistics produced by DOJ on defendants charged with witness killings do not provide evidence that Holloway was treated differently than similarly situated minority defendants because of his race.

### 2. Discriminatory Intent

To establish the discriminatory intent element in support of a request for discovery on a selective prosecution claim, a defendant must produce some evidence "that the decisionmakers in his case acted with discriminatory purpose." *See McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *see also Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. In other words, the defendant must offer some "evidence specific to his own case that would support an inference that racial considerations played a part." *See McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756; *see also Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480.

In *McCleskey,* the defendant claimed that he was sentenced to death on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *Id.* 481 U.S. at 286, 107 S.Ct. 1756. As proof of his claim, the defendant submitted a sophisticated statistical report—the Baldus study—which showed a disparity in the imposition of the death penalty in Georgia based on the murder victim's race and the defendant's race. *Id.* The Supreme Court held that the defendant could not establish a violation of the Equal Protection Clause because he offered no evidence specific to his own case that would prove that racial considerations played a part in his sentence. *Id.* 481 U.S. at 292–93, 107 S.Ct. 1756. The Baldus study, by itself, was not sufficient to support an inference that the defendant's sentence rested on purposeful discrimination. *Id.* 481 U.S. at 293, 107 S.Ct. 1756.

Thus, to establish discriminatory intent under *Armstrong* and *McCleskey,* Holloway must produce *some* evidence tending to show that the Attorney General of the United States acted with discriminatory purpose when she selected him to face the death penalty. The evidence must be specific to his own case and must support an inference that racial considerations played a part in his selection for capital prosecution. Holloway has failed to make this showing. He has not submitted *any* evidence of discriminatory intent that is specific to his own case. Instead, he has submitted superseding indictments

from two other cases, an affidavit by Kevin McNally of the Resource Counsel Project, and general statistics from DOJ. None of this evidence pertains specifically to Holloway's case. *See United States v. Roman,* 931 F.Supp. 960, 964, 967 (D.R.I.1996) (denying a motion to compel the government to disclose racial information in all potential federal death penalty prosecutions and finding, in part, that the defendant did not establish the discriminatory intent prong because he relied solely on an affidavit by Kevin McNally of the Resource Counsel Project and offered "no evidence specific to his own case that would support the inference that race played a part in his prosecution" (citing *McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756)).

■ Moreover, most of the information submitted by Holloway is statistical in nature. Under *McCleskey,* general statistics, without more, are insufficient to satisfy the discriminatory intent element. *See McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756; *United States v. Walker,* 910 F.Supp. 837, 859–60 (N.D.N.Y.1995) (denying defendants' request for discovery from DOJ disclosing that they were selected for capital prosecution on the basis of their race and stating that "the Court looks to *McCleskey* when holding that mere statistics, as presented here, are insufficient to satisfy the threshold requirements of the [discriminatory intent] element of defendants' equal protection claim"); *see also United States v. Feliciano,* 998 F.Supp. 166, 173–74 (D.Conn.1998) (denying defendants' request for discovery of information from the government tending to show that minorities are unfairly singled out for the death penalty where the information was allegedly to be used as mitigation evidence but the defendants were really seeking evidence of selective prosecution and did not meet "their initial burden of establishing entitlement to this information under *Armstrong*"). *But see Bradley,* 880 F.Supp. at 280–81 (finding that a showing of statistical disparity satisfied the discriminatory intent element of a request for discovery on a selective prosecution claim because *"McCleskey* did not address the significance of disparate impact [in] the context of a discovery request" and discovery requests are examined under a more lax standard). Because Hollo-

way has not produced any evidence tending to show the existence of discriminatory intent, his motion for discovery of information disclosing racial discrimination in the decision by DOJ selecting him to face the death penalty is denied.

## B. The Defendant's Motion to Dismiss the Government's Request for the Death Penalty

■ As noted above, prosecutors enjoy broad discretion to enforce the criminal laws; however, their discretion is constrained by the U.S. Constitution. *Armstrong,* 517 U.S. at 464, 116 S.Ct. 1480. To overcome the presumption that a prosecutor has not engaged in selective prosecution on the basis of race, a defendant must present "clear evidence" of both discriminatory effect and discriminatory intent. *Id.* 517 U.S. at 465, 116 S.Ct. 1480. Thus, to establish a prima facie case of selective prosecution, a defendant must make a stronger showing ("clear evidence") than is necessary to obtain discovery in support of a selective prosecution claim ("some evidence"). In the case at bar, as demonstrated above, Holloway has failed to present even "some evidence" tending to show the existence of discriminatory effect and discriminatory intent in DOJ's selection of him to face the death penalty. Therefore, he has necessarily failed to produce the clear evidence of discriminatory effect and discriminatory intent that is required to prove a claim of selective prosecution. Accordingly, Holloway's motion to dismiss the government's request for the death penalty because it is arbitrary, capricious and motivated, in part, by the defendant's race is denied.

### III. Conclusion

For the reasons stated above, the defendant's motion for discovery from DOJ and the defendant's motion to dismiss the government's request for the death penalty are denied. An appropriate order will enter.

### ORDER

Before the Court are (1) the defendant's motion for discovery of information disclosing racial discrimination in the decision by the

Department of Justice selecting the defendant to face the death penalty and (2) the defendant's supplemental submission of evidence and motion to dismiss the government's request for the death penalty because it is arbitrary, capricious and motivated, in part, by the defendant's race. For the reasons stated in the accompanying memorandum, the defendant's motions are hereby DENIED.

It is so ORDERED.