In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1258

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MATTHEW HAYES,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 173--J.P. Stadtmueller, Chief Judge.

ARGUED SEPTEMBER 14, 2000--DECIDED JANUARY 11, 2001

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

ROVNER, Circuit Judge. A grand jury indicted Matthew Hayes on one count of being a felon in possession of a firearm in violation of 18 U.S.C. sec. 922(g)(1), and a jury convicted him of that charge. The Armed Career Criminal Act, 18 U.S.C. sec. 924 (e), applied and Hayes was ultimately sentenced to 250 months imprisonment, five years supervised release, a $1,500 fine and $100 special assessment. Hayes now appeals that conviction, arguing selective prosecution, insufficiency of the trial evidence, and absence of probable cause for the initial arrest.

I.

The path to his nearly 21-year sentence began when Hayes engaged in the rather unremarkable act of crossing a street when the pedestrian signal read "DON'T WALK." Hayes' traverse was ill-timed, however, because he stepped out in front of a police car that had to brake to avoid hitting him. Hayes proceeded across the street, and the police car completed a U-turn and approached him. The officers testified that they were following Hayes to issue him a pedestrian violation citation. Rather than waiting to see what the officers would do, however, Hayes began running

away from them. One of the officers observed him trying to shove something into a couch that was located outside a secondhand furniture store. He then raced away again. The officers checked the couch and did not find anything there, but at that time a witness alerted them that Hayes had dropped something near the couch. The officers then recovered a firearm magazine containing nine-millimeter ammunition. Another witness, Larry Webb, informed the officers that he had observed that Hayes was carrying a gun, and that Hayes attempted to stuff it into the couch but then retrieved it and ran away. The officers then broadcast a description of Hayes, and other officers apprehended him approximately a block and a half away from the furniture store. He was placed under arrest for obstruction and on suspicion of carrying a concealed weapon. When the officers retraced Hayes' path of travel, they spotted a dumpster just north of the vacant lot by the secondhand furniture store, and resting on top of the dumpster was a black semiautomatic handgun with a brown handle. The witness who had observed Hayes carrying the weapon and attempting to place it in the couch cushions subsequently identified the gun as the one carried by Hayes. The loaded magazine retrieved from the sidewalk fit the gun recovered in the dumpster.

Hayes told the police that the firearm belonged to a friend of his named "James." Hayes further stated that James dropped the pistol when he was running, and that Hayes picked it up and the magazine fell out into his hand. He acknowledged that he tried to hide the gun under a couch on the sidewalk so he would not "catch a gun case," but then ran around the corner and threw it into the dumpster.

At trial, Hayes took a different tack in explaining the events of that night. He maintained that he ran from the police because he thought a warrant had issued for his failure to pay child support, and he denied putting the gun in the couch cushions or the dumpster. Hayes testified that he had lied to the police concerning his conduct because he was assured by the detective interviewing him that he would just get a misdemeanor charge, that his fingerprints were on the gun, and that the D.A. would "make it hard" for him because they had to release him on a murder charge he did not commit. The jury convicted him of being a felon in possession of a firearm.

II.

Hayes first argues that the court erred in refusing to suppress all evidence stemming from his arrest because the officers lacked probable

cause to believe he had committed a misdemeanor or felony offense at the time of his arrest. According to Hayes, the only "offense" for which there was probable cause at the time of his arrest was for jaywalking, and that nonmoving traffic violation gave them authority to issue a municipal citation, but not to arrest him.

In order to have probable cause for an arrest, law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense. United States v. Kincaid, 212 F.3d 1025, 1028 (7th Cir. 2000); United States v. Osborn, 120 F.3d 59, 62 (7th Cir. 1997). The probable cause standard is a flexible, practical common-sense one which is met if the facts are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. United States v. Colonia, 870 F.2d 1319, 1323 (7th Cir. 1989) (citations omitted); United States v. Evans, 27 F.3d 1219, 1228 (7th Cir. 1994).

At the time that Hayes was arrested, the officers had been presented with facts sufficient to indicate that Hayes was committing the offense of carrying a concealed weapon. At that time, the officers had already heard from Webb who told them that he observed Hayes with the gun, and that Hayes attempted to place the gun in the couch cushions but then ran off with it. That eyewitness account was consistent with the officer's own observation of Hayes attempting to place something in the couch. Moreover, the officers had recovered a magazine for a nine-millimeter firearm that another witness identified as having been dropped by Hayes. In conjunction with Hayes' flight upon seeing the officers approaching him, the facts certainly warranted a person of reasonable caution to believe that Hayes had committed the offense of carrying a concealed weapon. Because that evidence established probable cause for the arrest, we need not address the government's alternative argument that the seizure of the gun was not the fruit of the arrest.

Hayes next asserts that the district court erred in denying his motion to dismiss the superceding indictment on the grounds that he was a victim of selective prosecution (which he also terms "selective enforcement"). In that motion, Hayes argued that African-American felons are disproportionately selected for prosecution in federal court on charges of possession of a firearm by a felon, whereas members of other ethnic groups are charged only in state court. As support for this motion, Hayes presented an article from the Milwaukee Journal Sentinel

indicating that about a dozen offenders per year were referred for federal rather than state prosecution. Hayes' counsel argued that based on information and belief and his own experience, the overwhelming majority of those offenders subject to such federal prosecution from Milwaukee County have been African-American. Hayes' counsel then stated that he recently represented two African-American defendants who, like Hayes, were not only referred for federal prosecution for violation of 18 U.S.C. sec. 922(g)(1) (felon in possession of a firearm), but also were subject to the Armed Career Criminal Act, 18 U.S.C. sec. 924(e), and its mandatory minimum sentence of 15 years. With no further factual evidence, Hayes sought dismissal of the indictment or, in the alternative, a court order allowing Hayes to subpoena records from the Milwaukee County District Attorney's office concerning the nature and number of persons selected for federal versus state prosecution for unlawful possession of a firearm.

In response, the government produced its guidelines for Operation Triggerlock, which set forth race-neutral criteria for determining which convicted felons would be charged in federal court for possessing firearms. Under those guidelines, referrals for federal prosecution were sought in two types of cases: (1) felons in possession of firearms who have two or more prior convictions for crimes of violence or one prior crime of violence along with other aggravating circumstances such as multiple guns or prohibited weapons; and (2) felons in possession of firearms who are armed career criminals as defined by 18 U.S.C. sec. 924(e).

The Supreme Court in United States v. Armstrong, 517 U.S. 456, 458 (1996), directly addressed the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of race. The Court first recognized that a claim of selective prosecution draws on ordinary equal protection standards, and requires the claimant to demonstrate "that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Id. at 465 [citations omitted]. The Court further noted that to establish a discriminatory effect in race cases, the claimant must show that similarly-situated persons of a different race were not prosecuted. Accordingly, the Court held that in order to obtain discovery on such a claim, a defendant must at least produce some evidence that similarly-situated defendants of other races could have been prosecuted but were not. Id. at 469.

Hayes has produced no such evidence here. The submission of a newspaper article and his attorney's anecdotal evidence is remarkably similar (in form if not content) to the evidence rejected by the Armstrong Court as insufficient to trigger discovery. In Armstrong, which involved prosecutions for distribution of crack cocaine, the defendants submitted an affidavit from a criminal defense attorney alleging that in his experience, many non-blacks are prosecuted in state court for crack offenses, and a newspaper article reporting that crack criminals are punished far more severely than powder cocaine criminals, and that almost every one of them is black. Id. at 460-61. One of the defendants' attorneys in Armstrong also presented an affidavit alleging that an intake coordinator at a drug treatment center told her that there are an equal number of Caucasian and non-Caucasian users and dealers. Id. at 460. Finally, the defendants presented a "study" from the Public Defenders' Office indicating that all crack distribution cases closed by that office in 1991 involved African-American defendants. The Armstrong court held that the evidence was insufficient to meet the minimal burden of demonstrating that similarly-situated persons of another race were treated differently. Id. at 470.

The evidence presented by Hayes is similar in form but much less relevant in substance. The newspaper article presented by Hayes says nothing regarding the race of persons federally prosecuted for firearms offenses, and merely indicates that approximately a dozen cases were prosecuted in a year. Moreover, Hayes' attorney did not present an affidavit, but merely improperly included statements of personal experience in the motion itself. Those statements were similarly unhelpful because they merely indicated that African-Americans falling within the Operation Triggerlock guidelines were prosecuted in federal courts on such charges. Entirely absent is the information essential for a selective prosecution allegation--that persons of another race who fell within the Operation Triggerlock guidelines were not federally prosecuted. Hayes has failed to identify a single defendant of another race who met the guidelines of Operation Triggerlock but was not federally prosecuted, and presented no evidence whatsoever supporting his claim that African-Americans are disproportionately prosecuted for such offenses in federal court. Absent some evidence of different treatment for similarly-situated individuals of other races, Hayes is engaged in the type of fishing expedition rejected by the Supreme Court and this court. Id.; United States v. Westmoreland, 122 F.3d 431, 434 (7th Cir.

1997). As in Westmoreland, his claim "borders on the frivolous." 122 F.3d at 434. The district court properly denied his motion to dismiss the indictment or to obtain discovery based on selective prosecution.

Finally, Hayes argues that the evidence at trial was insufficient to support the jury determination of guilt. This claim too is patently without merit. Hayes largely relies on inconsistencies between Webb's testimony regarding the sequence of events and that of the officers. The lack of a complete overlap between the recollection of two witnesses is hardly surprising, and it was the province of the jury to determine whether those inconsistencies rendered the testimony incredible. See United States v. Griffin, 194 F.3d 808, 817 (7th Cir. 1999). We will overturn a conviction based on a credibility determination only if the witness' testimony was incredible as a matter of law. Id. That is an exacting standard, and can be met, for instance, by showing that "'it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all.'" Id., quoting United States v. Alcantar, 83 F.3d 185, 189 (7th Cir. 1996). In contrast, "witnesses' disagreements about such facts as the color or direction of the car are routine conflicts in testimony, inconsistencies well within the province of the jury to sort out." Griffin, 194 F.3d at 818. The inconsistencies identified by Hayes fall into the latter category, involving facts such as which vehicle Hayes walked out in front of and what other vehicles were present. Nothing in the record indicates that it was physically impossible for Webb to have observed the events to which he testified, or that those events could not have occurred. The alleged inconsistencies were properly weighed by the jury considering credibility, but they do not render his testimony incredible as a matter of law.

For the above reasons, the decision of the district court is affirmed.