**UNITED STATES of America, Plaintiff,**

v.

**Joseph P. MINERD, Defendant.**

**No. CR. 99–215.**

United States District Court, W.D. Pennsylvania.

Feb. 4, 2002.

Shaun E. Sweeney, United States Attorney's Office, Pittsburgh, PA, for Plaintiff.

Shelly Stark, Federal Public Defender's Office, Pittsburgh, PA, Jay T. McCamic, McCamic & McCamic, Wheeling, WV, Richard Kammen, Gilroy, Kammen & Hill, Indianapolis, IN, for Defendant.

## MEMORANDUM OPINION

COHILL, Senior District Judge.

Defendant Joseph P. Minerd is charged with maliciously damaging and destroying, by means of fire and an explosive, a building which was used in interstate commerce

and in an activity affecting interstate commerce, which conduct resulted in the deaths of Deana Mitts and Kayla Mitts, in violation of 18 U.S.C. § 844(i). Deana Mitts and her daughter died as a result of an explosion and fire at their townhouse in Connellsville, Pennsylvania. The government has served notice that it intends to seek the death penalty if the defendant is convicted.

Before the Court are two motions which assert that the defendant's race may have played in the decision to prosecute him under the death penalty. Defendant Joseph P. Minerd has filed the following: (1) Motion to Dismiss the Prosecution's Request for the Death Penalty because the Defendant's Race Was Improperly Used as a Consideration by the Department of Justice in Its Decision to Seek the Death Penalty (Doc. 65); and (2) Motion for the Discovery of Information Disclosing Improper Consideration of Race in the Decision by the Department of Justice Selecting Joseph Minerd to Face the Death Penalty (Doc. 71). The defendant has also submitted additional authority to support the discovery motion (Doc. 205).

The government's response to both motions is included in its Second Omnibus Response to the Defendant's Pretrial Motions (Doc. 97).

Having fully considered the submissions of the parties and the applicable law, we will deny both motions for the reasons set forth below.

## I.

**Motion to Dismiss the Prosecution's Request for the Death Penalty because the Defendant's Race Was Improperly Used as a Consideration by the Department of Justice in Its Decision to Seek the Death Penalty (Doc. 65)**

Defendant argues that he was selected for prosecution under the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.*, because he is white. He contends that selective prosecution of white defendants became necessary to offset the *Survey of the Federal Death Penalty (1988–2000)*, prepared by the Department of Justice ("DOJ Survey"), which showed that since the reinstitution of the federal death penalty, prosecutions have overwhelmingly been against non-whites. Mot. at ¶ 4. He states that from 1992 to 1995, virtually all capital prosecutions in the United States were against non-whites. Mot. at ¶ 5. Now, he alleges, the DOJ is attempting to balance its statistics by selecting more white defendants for death penalty prosecution. Mot. at ¶¶ 8, 12.

Government prosecutors have broad discretion in deciding whom to prosecute. *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). As long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, he has discretion to decide whether or not to prosecute. *United States v. Nguyen,* 928 F.Supp. 1525, 1544 (D.Kan.1996) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). " '[E]xceptionally clear proof' must be shown before an inference of abuse of that discretion may be drawn." *United States v. Roman,* 931 F.Supp. 960 (D.R.I.1996) (quoting *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. 663). In the absence of any evidence to the contrary, we must presume that the prosecution was undertaken in good faith. *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. 663.

Prosecutorial discretion, of course, is "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). To comport with the due process clause of the Fifth Amendment to our Constitution, the decision to prosecute may not be based upon an arbi-

trary standard such as race. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). A claim for selective prosecution must be analyzed under an equal protection framework. Minerd contends that he was selected for the death penalty because he is white. To prevail on this claim, he must show that the decision to pursue the death penalty against him had both a discriminatory effect and was made with a discriminatory intent. *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480. A discriminatory effect is demonstrated by establishing that "similarly situated individuals of a different race were not prosecuted." *Id.* at 465, 116 S.Ct. 1480. Discriminatory intent is shown by the existence of racial animus, and the defendant must show that the "decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (emphasis in original).

■ Minerd's motion is supported by a table showing Review Committee Recommendations by Capital Offense and Race/Ethnicity of the Defendant between 1995 and 2000 (Def.'s Ex. A), as well as a table of the Attorney General's Decisions between 1995 and 2000, also broken down by offense and the defendant's race or ethnicity. (Def.'s Ex. B). Exhibit B shows that the Attorney General considered fifteen defendants charged with violations of 18 U.S.C. § 844(i) for the death penalty. Ten defendants were white, and five were minorities. Of this group, she decided to seek the death penalty as to three white defendants (30%) and one minority defendant (20%). Seven white defendants and three minority defendants were not selected for death penalty prosecution. The total number of death penalty-eligible defendants evaluated from 1995 to 2000 was 796. Of these, only 166 defen-

dants were white. The Attorney General decided to seek the death penalty for 79 white defendants (47.6%) and for 175 minority defendants.

The government responds that prior to 1995, the only federal offenses that could be prosecuted as capital crimes were drug-related homicides brought under 21 U.S.C. § 848. These offenses were disproportionately committed by minority defendants. In 1994, Congress passed legislation which created death penalty procedures for dozens of other crimes, including 18 U.S.C. § 844(i), the provision under which Minerd is being prosecuted. Thus the range of offenses subject to the death penalty as well as the number of defendants potentially eligible for death penalty prosecution, have dramatically increased. Therefore, the government argues, it is hardly surprising that the number of white defendants selected for death penalty prosecution since 1995 has increased as well.

We find that Minerd has failed to satisfy either prong of the equal protection analysis. The statistics he has produced show that the Attorney General decided to seek the death penalty against 30% of the white defendants charged under the federal arson statute, and against 20% of the non-white defendants charged with the same offense. However, we are not convinced that this disparity shows that similarly situated individuals of a different race were not prosecuted. The numbers of defendants here are simply too small to be taken as proof that similarly situated individuals were treated differently because of their race. *McCleskey* teaches that statistics, when produced "without regard to the facts of a particular case," are insufficient proof of discrimination. *McCleskey,* 481 U.S. at 293, 107 S.Ct. 1756. *See, also United States v. Walker,* 910 F.Supp. 837, 859 (N.D.N.Y.1995); *United States v. Davis,* 904 F.Supp. 554, 560 (E.D.La.1995).

Furthermore, there is no evidence that the facts underlying the charges brought under section 844(i) against the other defendants in the DOJ statistics, were similar to the facts of the case before us. We have no evidence that any of the cases not determined to be death-eligible involved alleged residential arson by means of a pipe-bomb, which caused the deaths of a pregnant woman and her young child. Minerd has failed to show that the decision to pursue the death penalty in this case had the requisite discriminatory effect.

Nor has Minerd offered any evidence that the Attorney General's decision in his particular case was made with discriminatory intent. As the *McCleskey* Court noted, discriminatory purpose "implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *McCleskey,* 481 U.S. at 298, 107 S.Ct. 1756. Minerd offers no evidence specific to his own case from which we may infer that race played any part in the decision to prosecute him under the federal death penalty statute. Accordingly, his motion to dismiss the government's notice of intent to seek the death penalty in this case must be denied.

## II.

**Motion for the Discovery of Information Disclosing Improper Consideration of Race in the Decision by the Department of Justice Selecting Joseph Minerd to Face the Death Penalty (Doc. 71).**

In the alternative, Minerd requests broad discovery regarding the decision-making process used by the Justice Department and the Attorney General, which might support his selective prosecution claim that he was singled out for death penalty prosecution because he is white.

Minerd seeks an order directing the DOJ to provide the following information: a list of all cases in which a defendant was charged with a violation of 18 U.S.C. § 844(i) that resulted in a death; a statement describing whether or not the Attorney General was requested to and did authorize the prosecution to seek the death penalty in any case identified above; the race of all individuals charged by either state or federal authorities in any case identified above; the race of any victims in any case identified above; the criminal history of all individuals who were charged by either state or federal authorities in conjunction with the alleged crime in any case identified above; the prosecution memorandum provided to the Death Penalty Review Committee and the Attorney General prior to the decision to authorize or not authorize the prosecution to seek the death penalty in any case identified above; any written statements or internal memoranda by the Attorney General justifying the decision to seek or not seek death in any case identified above; and the prosecution's request for the death penalty filed with the district court if death was authorized in any case identified above. Mot. (unpaginated).

With respect to all cases not detailed in the DOJ Survey, Minerd requests production of the federal statute allegedly violated; the race of the defendant(s) and the victim(s); whether the local U.S. Attorney requested that the death penalty be authorized; whether the Attorney General authorized the prosecution to seek the death penalty; and any request for the death penalty filed in the trial court. Mot. (unpaginated).

The government responds that Minerd has no right, under Fed.R.Crim.P. 16, which governs discovery in a criminal case, or under any statute, to the materials he seeks. The government further asserts

that the documents sought are privileged, and are protected as the work product of government attorneys.

The defendant has not countered the government's position that Rule 16 does not entitle him to this discovery. Perhaps he is implicitly acknowledging the force of the Supreme Court's conclusion in *Armstrong*, which clearly holds that Rule 16(a)(1)(C) does not authorize the defendant to examine government documents relevant to the preparation of a claim of selective prosecution. 517 U.S. at 463, 116 S.Ct. 1480. However, as *Armstrong* explains, Rule 16 does not control the case before us. This is because "a selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* In accordance with *Armstrong*, whether discovery should be ordered on a selective prosecution claim must be addressed through an equal protection analysis.

■■■■ As we have stated, under that framework the defendant must establish that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. However, the standard of proof to secure discovery on a selective prosecution claim is lower than the standard for proof required at trial. To obtain discovery on this claim, a defendant must produce " 'some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *Armstrong*, 517 U.S. at 468, 116 S.Ct. 1480 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)). As the Supreme Court has explained, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 464, 116 S.Ct. 1480. This standard "balances the Government's interest in vigorous prosecution

and the defendant's interest in avoiding selective prosecution." *Id.* at 470, 116 S.Ct. 1480. The *Armstrong* Court emphasized that "the standard is a demanding one." *Id.* at 463, 116 S.Ct. 1480.

In *Armstrong*, the Supreme Court held that to satisfy the discriminatory effect prong under the lower burden for a discovery motion, a defendant must at least produce "some evidence that similarly-situated defendants of other races could have been prosecuted but were not." *United States v. Hayes*, 236 F.3d 891, 894 (7th Cir.2001) (citing *Armstrong*, 517 U.S. at 469, 116 S.Ct. 1480). The Court left undisturbed *McCleskey's* requirement that the second prong of an equal protection claim be met by evidence that the decision to prosecute in the defendant's particular case was motivated by discriminatory intent. We agree with those courts which have interpreted *Armstrong* as requiring a defendant to produce "some evidence" to satisfy both elements. *United States v. Walker*, 910 F.Supp. 837, 858 (N.D.N.Y. 1995) (citing *McCleskey*, 481 U.S. at 292, 107 S.Ct. 1756); *United States v. Roman*, 931 F.Supp. 960, 967 (D.R.I.1996).

The Court of Appeals for the Third Circuit has not spoken on what constitutes "some evidence" for discovery purposes in a case such as this. Generally, however, courts have been reluctant to provide the broad discovery Minerd seeks. This is so even where the amount of evidence proffered exceeds what Minerd has provided.

In *United States v. Holloway*, for example, the defendant, who was white, argued that he was entitled to discovery on his claim that he had been deemed death-eligible because of his race. Holloway offered the following evidence to support his claim: (1) an affidavit by Kevin McNally, an attorney with the Federal Death Penalty Resource Counsel, listing 133 cases in which the DOJ had sought the death pen-

alty since 1988 and providing the race, gender, and name of each defendant, as well as the court and docket number where each case was filed; (2) superseding indictments in two cases where black defendants in the federal system and charged with crimes "substantially identical" to Holloway's, but who had not been selected for the death penalty; and (3) records produced in the Southern District of New York providing statistical information on 296 defendants reviewed by the Attorney General between January 27, 1995 and August 10, 1998. 29 F.Supp.2d 435, 437–38 (M.D.Tenn.1998).

The court concluded that Holloway had failed to provide "some evidence" of either discriminatory effect or intent. Although his statistics showed that 60% of white defendants were death-eligible while only 18% of black defendants were selected to face the death penalty, the court determined that the number of cases involved, twenty-five, was far too small to support the defendant's theory. Thus the DOJ statistics did not provide enough evidence that Holloway was treated differently than similarly situated minority defendants because of his race. *Id.* at 441.

Turning to the discriminatory intent prong, the court found that none of the evidence submitted was specific to Holloway's own case. *Id.* at 441–42. Moreover, Holloway's evidence was purely statistical, and, under *McCleskey,* "general statistics, without more, are insufficient to satisfy the discriminatory intent element." *Holloway,* 29 F.Supp.2d at 442, citing *McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756. *See, also, United States v. Roman,* 931 F.Supp. 960, 964, 967 (D.R.I.1996) (defendant failed to establish criminal intent prong of discovery motion because only evidence, an affidavit by Kevin McNally, was not specific to his case); *United States v. Walker,* 910 F.Supp. 837, 859–60 (N.D.N.Y.1995) (defendant not entitled to discovery to support a claim of selective prosecution on the basis of race because evidence was mere statistics and failed to satisfy *McCleskey* ).

We are aware that the court in *United States v. Bradley* ordered the government to provide evidence similar to what Minerd seeks here. 880 F.Supp. 271, 280–81 (M.D.Pa.1994). *Bradley* held that since the burden of proof in a discovery motion is much lower than for evidence produced for trial, statistical proof alone was enough to satisfy the threshold requirement. That case, however, was decided before the Supreme Court clarified the applicable standard in *Armstrong,* which we are convinced establishes that the defendant's evidentiary burden is a more difficult one to meet than *Bradley* suggests. We therefore decline to follow *Bradley's* example.

In support of his motion, Minerd directs us to *United States v. Bass,* a decision in which the Court of Appeals for the Sixth Circuit affirmed an order directing the government to provide most of the documents Minerd seeks here. 266 F.3d 532 (6th Cir.2001).[1] We find *Bass* distinguishable from the case before us. *Bass* was charged with the intentional firearm killing of two individuals, and was selected for death penalty prosecution. In support of his discovery motion, *Bass* presented the public comments made by Janet Reno and her Deputy Attorney General Eric Holder. He also produced DOJ statistics showing that although the federal prison

---

1. The plurality held that Bass had met the standard for discovery, and remanded so that the district court could review the requested documents for relevancy and privilege *in camera.* One member of the panel dissented from the holding that defendant had produced "some evidence" to satisfy either discriminatory effect or intent, and found no evidence to support either conclusion. 266 F.3d at 541–42 (Nelson, J., concurring in part and dissenting in part).

population was 57% white to 38% black, those charged with death-eligible crimes were overwhelmingly black (48% black to 20% white). *Id.* at 537. Furthermore, he showed that none of the 17 defendants charged with a death-eligible crime in the Eastern District of Michigan were white. *Id.* Bass also furnished DOJ statistics regarding plea bargains in death-eligible cases, indicating that the government entered into a plea bargain with 48% of white defendants, compared to only 25% of similarly situated black defendants. *Id.* In addition, Bass offered statistical evidence that death-eligible black defendants were more often charged with broad offenses such as firearms murder, racketeering murder, and continuing criminal enterprise murder, which could be charged "in a wide array of circumstances." *Id.* Death-eligible white defendants were most often charged with more narrowly defined offenses, such as murder within a federal jurisdiction. *Id.* In addition to the Attorney General's comments, then, Bass produced evidence showing strong racial disparity in the percentage of federal prisoners selected for prosecution under the death penalty, in the percentage of death-eligible prisoners who were offered plea bargains, and in the actual offenses charged against white and black defendants.

In reaching its decision, the Sixth Circuit found the statistics showing that the government entered plea bargains with one in two death-eligible white defendants,

as opposed to one in four death-eligible black defendants, particularly significant. *Id.* at 539. The court concluded that although Bass' evidence of discriminatory intent was only statistical, it nevertheless satisfied the "similarly situated" requirement. The court found that "with the plea bargaining statistics, Bass has identified a pool of similarly situated defendants— those whose crimes shared sufficient aggravating factors that the United States chose to pursue the death penalty against each of them." *Id.* Thus Bass had produced "some evidence" of discriminatory effect.

The *Bass* court further determined that despite *McCleskey*, these statistics and statements could constitute enough evidence of discriminatory intent to order discovery. The court's reasoning on the intent prong was vague; the court merely stated that the district court had not abused its discretion in ordering discovery, based upon "the stark discriminatory effect of the federal death penalty protocol, coupled with the Department of Justice's official statements" recognizing the possibility of intentional discrimination. 266 F.3d at 540. The court failed to address any proof that the decision made in Bass' particular case was made with discriminatory intent. We are not persuaded by the Sixth Circuit's reasoning, and, in any event, that decision is not binding precedent in this jurisdiction.[2]

To support his discovery motion, Minerd provides the same two tables submitted

---

**2.** The district court's order in *Bass* was reviewed for abuse of discretion. *Id.* at 536. We note a split of authority in the federal courts on the standard of review applicable to a district court's determination that a defendant has produced enough evidence to proceed to discovery on a claim of selective prosecution on the basis of race. Both the Fourth and Tenth circuits have concluded that such questions must be subject to *de novo* review. *See United States v. James,* 257 F.3d 1173,

1177–78 (10th Cir.2001) (holding that a district court's decision to grant or deny a selective prosecution discovery motion is not entitled to any deference on appeal); *United States v. Olvis,* 97 F.3d 739, 743 (4th Cir. 1996) (concluding that the rigorous standard of proof required by *Armstrong* justifies a correspondingly rigorous standard for discovery in aid of such a claim). The Court of Appeals for the Third Circuit has not addressed this question.

with his motion to dismiss the notice of intent to seek the death penalty (Doc. 65). In addition, he also asserts that then-Attorney General Janet Reno called the statistical variation between white and minority defendants "troubling," a statement which was widely reported and which we do not dispute. Def.'s Mot. at ¶ 4. Her statement, however, is not evidence upon which we are willing to find discriminatory effect and grant discovery in this matter. Nor is his statistical evidence sufficient proof that similarly situated minority defendants were not selected for death penalty prosecution because of their race. Although the statistics show that the death penalty was sought for more white defendants than minority defendants, Minerd does not show that these small numbers are statistically significant. Indeed, the fifteen defendants charged with the same offense as Minerd and considered by the Attorney General for death penalty prosecution, comprise a smaller group than that rejected by the *Holloway* court as being too small a sample to support an inference of discrimination. 29 F.Supp.2d at 441.

As to discriminatory intent, the Attorney General's statement does not speak to the decision made in Minerd's individual case. The remaining evidence is purely statistical, and is not specific to his prosecution. The statistical information provided in this case is insufficient to raise an inference of discriminatory intent. *See McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756 (holding that statistical evidence of racial disparity is insufficient *per se* to satisfy the discriminatory intent element); *United States v. Gilbert,* 75 F.Supp.2d 12, 15–16 (D.Mass.1999); *Holloway,* 29 F.Supp.2d at 442; *Walker,* 910 F.Supp. at 859–60. In addition, he has not come forward with any "evidence specific to his own case that racial consideration played a part" in the decision to seek the death penalty in this case. *McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756.

We find that Minerd has failed to produce "some evidence" that the decision to seek the death penalty in this case was made with discriminatory purpose or that it had a discriminatory effect. Therefore his motion to compel the government to provide discovery on this issue must be denied. Since we reject this motion on equal protection grounds, we need not reach the government's argument that the material Minerd seeks is protected as attorney workproduct or is otherwise privileged.

## III. Conclusion

For the reasons set forth above, we will deny defendant's Motion to Dismiss the Prosecution's Request for the Death Penalty because the Defendant's Race Was Improperly Used as a Consideration by the Department of Justice in Its Decision to Seek the Death Penalty (Doc. 65); and (2) Motion for the Discovery of Information Disclosing Improper Consideration of Race in the Decision by the Department of Justice Selecting Joseph Minerd to Face the Death Penalty (Doc. 71).

An appropriate Order follows.

## ORDER

AND NOW, to-wit, this *4th* day of February, 2002, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant's Motion to Dismiss the Prosecution's Request for the Death Penalty because the Defendant's Race Was Improperly Used as a Consideration by the Department of Justice in Its Decision to Seek the Death Penalty (Doc. 65) be and hereby is DENIED.

IT IS FURTHER ORDERED that defendant's Motion for the Discovery of Information Disclosing Improper Consideration of Race in the Decision by the Department of Justice Selecting Joseph

Minerd to Face the Death Penalty (Doc. 71) be and hereby is DENIED.